## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARTHUR GILBERT,**<br>**5800 Quantrell Ave. #1513**<br>**Alexandria, Virgina 22312** | )<br>)<br>) |
| | ) |
| **Plaintiff,** | )<br>) |
| | ) |
| **v.** | )<br>) |
| **MICHAEL CHERTOFF,**<br>**Secretary**<br>**Department of Homeland Security**<br>**Washington, DC 20528** | )<br>)<br>)<br>) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

(Discrimination and Retaliation on Account of Protected EEO Activity
and Race and Age)

### I.   PARTIES

1.      Arthur Gilbert ("Gilbert") is a GS-13 Program Officer/Customs Inspector for the Agency at its Headquarters in Washington, D.C.

2.      Defendant Michael Chertoff, is the Secretary of the Department of Homeland Security of the United States and is sued in his official capacity only.

### II.   JURISDICTION AND VENUE

3.      The Court has jurisdiction of this matter pursuant to 42 U.S.C. § 2000 et. seq and 28 U.S.C. 1331, 1343(a).

4.      Venue is proper in the District of Columbia, because this case arises out of discrimination and reprisal committed by Defendant with respect to Plaintiff's employment in this District.

### III.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.     Gilbert filed a formal charge of discrimination on with the Agency's EEO office on or about September 12, 2001.

6.     On January 14, 2004, Gilbert received a final decision on his claim from an Administrative Judge ("AJ") with the Equal Employment Opportunity Commission's Washington Field Office.

7.     On January 20, 2004, the Agency accepted the AJ's decision and issued a final order.

8.     On February 25, 2004, Gilbert timely appealed the AJ's decision.

9.     On August 3, 2005, the EEOC's Office of Federal Operations affirmed the AJ's decision.

10.     Therefore, Gilbert is now free to exercise his private right of action in the U.S. District Court and to obtain a trial de novo pursuant to 42 U.S.C. 2000e-16(c).

### IV.     FACTS COMPELLING A LIABILITY FINDING

#### Background

11.     Gilbert is currently a Program Officer/Customs Inspector, Grade 13, with the Department of Homeland Security.

12.     Gilbert has more than thirty years of government service in Customs, of which more than fifteen years consisted of staff-related work and field management.

13.     Gilbert is Mexican-American.

14.     Gilbert is fluent in both English and Spanish.

15.     Gilbert was born on July 3, 1952 and was over forty years old at the time of the discriminatory conduct by the Agency.

2

16.     Gilbert holds a Bachelor of Arts degree in Spanish and Education from San Diego State University.

### Gilbert's MSPB Complaint and Settlement Agreement

17.     In 1991 and 1996, several disgruntled subordinates of Gilbert's and Agency employees located in San Diego accused Gilbert of misconduct.

18.     Gilbert was cleared of any misconduct after investigations by the Agency, the FBI, the DEA and the Department of Justice.

19.     In 1993 and 1997, Gilbert filed claims alleging discrimination with the MSPB regarding the Agency's handling of the misconduct charges.

20.     Gilbert and the Agency entered into settlement agreements concerning the allegations made to the MSPB.

21.     A settlement agreement provided, inter alia, that Gilbert was assigned to a GS-1801-13 position in the Office of Field Operations at Agency Headquarters in Washington, D.C. as of June 5, 1998.

22.     The settlement agreement further provided that Gilbert was to receive two years of leave without pay during which time he was deemed to have received credit for two years of headquarters experience.

23.     The settlement agreement directed Gilbert to report for duty in Washington D.C. on July 1, 2000.

24.     As directed by the settlement agreement, Gilbert reported for duty to the Office of Field Operations at Agency Headquarters in Washington, D.C. on July 1, 2000.

### Gilbert Has Significant Knowledge of Customs Law, Regulations and Procedures

25.     Gilbert began his career with U.S. Customs in 1975.

26.     From 1977 to date, Gilbert has performed the duties of a Customs Inspector, Senior Customs Inspector, and Customs Supervisory Inspector, and served as the Deputy Director for Inspection and Control, Branch Chief and Program Officer.

27.     Gilbert has performed the duties of an Inspector and Manager at all major phases of Customs, including Air, Land and Sea.

28.     Gilbert has performed the duties of middle and higher management for over fifteen years.

29.     Gilbert has developed, modified and improved several national programs involving customs operations.

30.     While assigned to the D.C. Office of Field Operations, Gilbert assists in developing national policies, regulations, guidelines and procedures related to passenger enforcement and facilitation.

31.     During his tenure as Chief Inspector/Branch Chief from 1991 to 1998 in Otay Mesa and San Ysidro, he directed and coordinated a full range of inspectional duties at the world's busiest land border crossing.

32.     At San Ysidro, Gilbert directed the operation that processed over 100,00 people and 40,00 plus vehicles daily.

33.     He also developed, improved and evaluated inspections and control operational programs while at Otay Mesa and San Ysidro.

34.     Gilbert implemented cargo security programs, free flow inspectional assignments and established a three tier targeting inspection for Customs enforcement.

### Gilbert Has Extensive Supervisory Experience

35.     During his career, Gilbert has overseen operations requiring a staff of over three hundred rotational employees and forty supervisors.

4

36.    From June 1984 to August 1986, Gilbert supervised over thirty employees in Los Angeles, CA.

37.    From 1989 to October 1991, Gilbert had supervised approximately twenty employees as a First Line Supervisor in San Diego, CA.

38.    From 1989 to 1994, Gilbert worked as a Deputy Director, Inspection and Control, in San Diego and supervised over 5 employees.

39.    From 1991 to 1998, Gilbert worked as Branch Chief/Chief Inspector in San Diego and supervised more than 40 supervisors who supervised over 300 employees.

40.    Gilbert meets the criteria and work experience for a Grade 15 management position.

41.    Gilbert meets the criteria and work experience for a Senior Executive Service position.

### Gilbert Has Considerable Headquarters Experience or the Equivalent of Headquarters Experience

42.    Gilbert was credited with two years Headquarters experience as a result of the settlement agreement.

43.    In addition to the credited years of Headquarters experience, he has over fifteen years equivalent of Headquarters experience.

44.    Gilbert has been detailed to work on many assignments for Headquarters throughout his career, including: Program Analyst, Exodus Operation, Carrier Initiative Program, and Operation Buckstop.

45.    These programs were headed by Headquarters and required implementation of Headquarters' policies and procedures.

46.     Gilbert implemented programs and operations under the direction of Headquarters during these assignments.

47.     Gilbert's Headquarters experience deals with writing policy and managing programs, which Gilbert has been performing for over 15 years implementing and producing results and supervision.

### Gilbert Demonstrated Proficiency in Both Oral and Written Communication

48.     As an Operations Branch Chief at San Ysidro, Gilbert conducted Customs related business with local, state, and federal government agencies, as well as many foreign officials, that required extensive oral communications.

49.     Gilbert represented Customs as a member of the National Performance Review import matters such as implementation of High Occupancy Vehicles lanes to facilitate entry.

50.     This task required oral communication with management officials from U.S. Immigration, the State Department, the California Transportation Department, and Mexican governmental agencies.

51.     Gilbert conducted extensive training sessions on customs procedures involving air, land and sea.

52.     As a Senior and Supervisory Inspector, Gilbert wrote standard operating procedures on inspection and release of passengers, cargo and carriers.

53.     In this position, he also wrote Public Bulletins on new Customs local policy that were circulated to the importing community.

54.     Gilbert also wrote memoranda addressing Congressional inquiries on Customs matters.

## Gilbert Has Received Outstanding Performance Reviews Throughout His Career With Customs

55.     Gilbert has received excellent performance reviews throughout his career.

56.     For the review period July 5, 1993 to June 30, 1994, and June 1, 1994 to May 31, 1995, Gilbert received a summary performance rating of "Outstanding."

57.     For the time period of July 1, 2000 to September 30, 2000, Gilbert received the highest annual proficiency rating of "Successful."

58.     For the review dated October 1, 2001 to September 30, 2002, Robert Jacksta, Gilbert's supervisor, again rated Gilbert "Successful."

59.     Jacksta has repeatedly praised Gilbert regarding the quality of his work.

60.     During his tenure as Gilbert's supervisor, Jacksta has not communicated any negative opinion regarding Gilbert's writing skills or efficiency or completion of assignments on any informal or formal, verbal or written, performance review.

## Gilbert Has Received Numerous Awards for Outstanding Performance Throughout His Career with Customs

61.     In 1985 and 1986, Gilbert received an award for his work as a Supervisory Inspector at LAX.   Additionally, in 1986 he was awarded a Commissioner's Unit Citation for his outstanding performance in "Operation Buckstop."

62.     In 1986, Gilbert received a letter of appreciation for a temporary duty assignment to Peru in which he made an oral presentation on behalf of U.S. Customs.

63.     In 1987, Gilbert received a Special Act Award.

64.     In 1990, Gilbert received an award for Outstanding Performance as a Supervisory Inspector while working in San Diego.

65.     In 1994 and 1995, Gilbert received an award for Outstanding Performance for his work as an Operations Branch Chief in San Ysidro.

66.     In 1996, Gilbert received two Special Act awards and a Commissioner's Unit Citation for his outstanding performance as Operations Branch Chief in San Ysidro.

### Gilbert Arrives at Headquarters

67.     In July 2000, pursuant to the settlement agreement, Gilbert reported for duty at the Office of Field Operations at Agency Headquarters in Washington, D.C.

68.     Gilbert was assigned to work in the Passenger Programs division.

69.     Robert Michael Jacksta was Executive Director of the Passenger Programs division at the time of Gilbert's assignment.

70.     When Gilbert arrived at Headquarters, he went to Jacksta's office and introduced himself to Jacksta and told him of his experience in California concerning the allegations of misconduct raised against him and Gilbert's subsequent claims of discrimination against the Agency.

71.     Gilbert told Jacksta that he wanted to make a clean start at Headquarters.

72.     Jacksta walked out of the office, barely acknowledging Gilbert's overture of good intentions.

### Jacksta Refuses to Recommend Gilbert for Promotion

73.     Over the following two years, Gilbert applied for several promotions to the GS-14 level.

74.     As Executive Director of Gilbert's division, Jacksta's recommendation was critical for Gilbert to be considered for a promotion to any vacancy.

75.     Over two years, Jacksta had approximately 19 opportunities to recommend Gilbert for a promotion.

76.    Despite the fact that Gilbert was consistently rated as one of the best-qualified for the vacancies for which he applied, Jacksta repeatedly declined to recommend Gilbert for a promotion.

77.    For example, in September of 2000, Gilbert applied for vacancy number HEADQ/00-304KBS – a Grade 14 Customers Inspector position.

78.    Gilbert was one of nine applicants selected as best-qualified for the vacancy.

79.    John Heinrich, Deputy Assistant Commissioner, a white non-Mexican-American male, was listed as the selecting official for this position.

80.    In late September and early October of 2000, Heinrich selected Sandra Hasegawa, a 49 year-old non-Mexican-American female, Kimberly Ann Nott, a 38 year old, non-Mexican -American female, Robert Colbert, a 51 year old non-Mexican-American male, and Gay Laxton, a 40 year old non-Mexican-American female.

81.    Gilbert was significantly better qualified for the position than Hasegawa, Nott, and Laxton.

82.    Laxton held only an associate's degree and had been with Customs for approximately eleven years at the time of her application.

83.    Gilbert had a bachelor's degree and more than ten years additional experience and significantly more extensive experience with Customs regulations and programs than did Laxton.

84.    Gilbert did not receive any further update, response or notification regarding his application and interview for Vacancy Announcement HEADQ/99-432GH.

85.     Gilbert did not know and had no reason to know until much later that he had not been selected for a position under this vacancy announcement and that younger, non-Mexican-American applicants had been selected rather than him.

86.     Upon information and belief, Jacksta had declined to recommend Gilbert to Heinrich despite the fact that Gilbert was the best-qualified applicant.

87.     Without a recommendation from his Executive Director, Gilbert had little or no chance of being considered for the vacancy by the selecting official.

88.     In fact, on October 27, 2000, an additional selection register for vacancy announcement number HEADQ/00-304 KBS was submitted to selecting official Heinrich.

89.     Gilbert was listed as one of the nine best-qualified candidates.

90.     On November 2, 2000, Heinrich returned the list without making any selection.

91.     Upon information and belief, Jacksta had again declined to recommend Gilbert for the vacancy despite his name's appearance on the certification list.

92.     Upon information and belief, Jacksta did not recommend Gilbert for this available position because of his discriminatory and/or retaliatory animus.

93.     Upon information and belief, Heinrich was also aware of Gilbert's prior protected activity before being assigned to Headquarters.

94.     Upon information and belief, Heinrich did not select Gilbert for the promotion because of his discriminatory and/or retaliatory animus.

95.     Gilbert did not receive any notice that Heinrich had declined to make a selection from the best-qualified list and did not learn until much later that no selection had been made.

10

**Jacksta Continues His Pattern Of Refusing to Recommend Gilbert For a Promotion**

96.    In April 2001, Gilbert applied for vacancy number HQOFO/01-005KBS, Grade 14 Customs Inspector.

97.    Gilbert was selected as one of the five best qualified applicants and placed on the certification list submitted to the selecting official, Assistant Commissioner Bonni G. Tischler, a non-Mexican American female who was approximately 55 years old.

98.    On May 30, 2001, Tischler selected Edward Moriarty, (non-Mexican-American, 36 years old), Robert Schotens (non-Mexican-American, 39 years old), and John Wagner (non-Mexican-American, 33 years old).

99.    Gilbert had significantly more Customs knowledge and experience and management experience than Moriarty, Schotens, and Wagner,

100.    Scholtens and Wagner had only approximately ten years with Customs.

101.    Gilbert had over twenty years experience in Customs.

102.    In fact, Gilbert's time in Grade 13 was longer than the total Customs time in service of Moriarty, Schotens, and Wagner.

103.    In or around June 2001, another selection list was generated for Vacancy Number HQOFO/01-005 KBS.

104.    Gilbert again made the certification list as one of seven best-qualified applicants.

105.    The list was submitted to Tischler as the selecting official on June 22, 2001.

106.    Tischler selected Mark Reefe, a 32 year old non-Mexican American, for the vacancy.

107.    On July 1, 2001, Jacksta called Gilbert into his office and admitted that Jacksta had not recommended Gilbert for a position under Vacancy Number HQOFO/01-005 KBS.

108.    Jacksta stated "I selected someone that has been here longer."

109.    Jacksta stated "Last list I promoted Tony Van Ravenswayy and I did not know you were on the list."

110.    Jacksta told Gilbert that he had been doing a good job and if he continued to do a good job and he would get receive a promotion.

111.    Prior to his conversation with Jacksta, Gilbert did not know and had no reason to know that he was not selected for the available positions and was not aware that he had been the victim of discrimination and/or retaliation.

112.    Tischler, who is now deceased, averred before her death that she relied upon recommendations in making her selection.

### Gilbert's EEO Complaint and Investigation into His Allegations of Discrimination and Retaliation

113.    Pursuant to 29 C.F.R. §1614.105(a), Gilbert contacted an EEO counselor on July 12, 2001, regarding his nonselection after he learned from Jacksta that he had not been selected for any of the available HQOFO/01-005KBS positions.

114.    Gilbert filed a formal charge of discrimination on with the Agency's EEO office on or about September 12, 2001.

115.    An EEO investigation into Gilbert's charges occurred from January 7 through January 11, 2002.

116.    In the course of the investigation, Tischler stated that she relied on the recommendations from Executive Directors in the program area where the applicant was placed when making her selection.

117.    Jacksta stated that he did not recommend Gilbert for a promotion because Gilbert needed to improve his writing skills, be more efficient at getting his work done and complete his work in a timely manner.

118.    Before the EEO investigation, Jacksta had never criticized Gilbert's performance, and has repeatedly praised Gilbert regarding the quality of his work.

119.    As stated above, for the time period of July 1, 2000 to September 30, 2000, Gilbert received the highest annual proficiency rating of "Successful" – the highest rating available on the review form.

120.    For the review dated October 1, 2001 to September 30, 2002, Arthur Pitts, Gilbert's director supervisor, again rated Gilbert "Successful."

121.    Jacksta formally approved Pitts' rating of Gilbert's performance.

122.    During his tenure as Gilbert's supervisor, Jacksta has not communicated any negative opinion regarding Gilbert's writing skills or efficiency or completion of assignments on any informal or formal, verbal or written, performance review.

123.    During the investigation, Heinrich stated that he relied on the information provided by Human Resources, his experience within the Agency and the recommendations from the Executive Directors when making the selection.

124.    Heinrich further stated that Gilbert had not been recommended by any of the official in the Office of Field Operations and that although he knew Gilbert, Gilbert had not been brought to his attention as a particularly strong performer or skilled leader.

13

125.    Heinrich also stated that Gilbert needed more Headquarters experience before he could receive a promotion.

126.    As stated above, Gilbert had consistently received outstanding performance reviews.

127.    Gilbert was exceedingly more qualified than the selectee for the position.

### Gilbert Applies For and Is Continually Denied Promotions While Assigned to Headquarters

128.    In addition to the promotions discussed above, Jacksta declined to recommend Gilbert for several additional vacancies.

129.    For example, in September of 2000, just a few short months after Gilbert's discussion with Jacksta regarding his prior EEO activity, Gilbert applied for vacancy number HEADQ/00-305 KBS Supervisory Field Operations Specialist, Grade 14.

130.    Gilbert was ranked as the best qualified of the thirteen applicants chosen for the certification list.

131.    Tischler was the selecting official for this vacancy.

132.    On November 15, 2000, Tischler selected Mirtha Gonzalez, a 34 year-old, non-Mexican-American female for the position.

133.    Gonzalez was ranked lower than Gilbert in the rating criteria.

134.    Gilbert had over sixteen years' more experience with Customs, including experience in supervisory position, than did Gonzalez who had only been with Customs since 1992 and had only held a supervisory position since August of 2000.

135.    In fact, Gonzalez had worked as a *Paralegal Specialist* and not a Customs Agent for approximately five years of her employment with Customs!

14

136.    Gilbert never received any further response regarding his application for vacancy number HEADQ/00-305 KBS and did not know until much later that he had not been recommended or selected for the promotion.

137.    In December of 2000, Gilbert applied for vacancy number HEADQ/00-402CAL – Grade 13/14 Customs Inspector.

138.    Gilbert, Michael Jackson, age 59 and Grady Tipton, age 53, both non-Mexican-American, were among the ten best-qualified applicants submitted to the selecting official, Tischler.

139.    On March 9, 2001, Tischler selected Jackson and Tipton for the vacancies.

140.    Tipton had only been employed by Customs since 1994 and had worked for a sheriff's department for approximately 20 years before joining the agency.

141.    *Gilbert, as Branch Chief, had previously supervised Jackson,* as his line supervisor, in the field in San Diego.

142.    Gilbert had significantly more experience with Customs regulations and enforcement than did Tipton at the time of the selection.

143.    Gilbert never received any notification that he was not selected or that another applicant had been selected for the vacancy until much later after the selection had been made.

144.    On January 25, 2001, the selection register was again submitted to Heinrich for vacancy number HEADQ/00-304 KBS, Grade 14 Customs Inspector.

145.    Gilbert again made the certification list.

146.    On February 14, 2001, Heinrich selected Robert Michaud, a 54 year-old non-Mexican American male with no prior EEO activity, for the vacancy.

15

147.    On March 22, 2001, the selection register for HEADQ/00-304 KBS was submitted to selecting official Tischler.

148.    Gilbert was again selected as one of eleven best-qualified candidates.

149.    Tischler selected Glenn Ross, a non-Mexican American male with no prior EEO activity, age 47, for the position.

150.    Gilbert applied for vacancy announcement HQOFO/00-006KBS, Grade 14 Supervisory Field Operations Specialist.

151.    Yvonne Acosta-Hagans, age 35, non-Mexican-American, and Gilbert made the best-qualified list.

152.    Upon information and belief, Heinrich selected Acosta-Hagans for the position on July 5, 2001.

153.    Gilbert was exceedingly more qualified than Acosta-Hagans for the vacancy.

154.    Acosta-Hagans had been employed as a Paralegal Specialist from 1989 to 1999.

155.    She had only been a Field Operations Specialist, Grade 13 since January 17, 2000 when she received the promotion.

156.    Gilbert's application reflects that he had worked for customs since 1977 and had held the position of Customs Inspector from 1977 to 1983, Senior Customs Inspector from 1983 to 1984, Supervisory Customs Inspector from 1984 to 1991, and served as Deputy, Director Inspection and Control from 1989 to 1991.

157.    Gilbert had also served as Chief Inspector, serving as Branch Chief, from 1991-1998.

158.    Acosta-Hagans had only approximately one year of supervisory experience at the time of her application.

159.    Gilbert had more than ten times the supervisory experience of Acosta-Hagans.

160.    Gilbert has never been informed by the Human Resources Office or anyone at the Agency of the status of his application for vacancy number HQOFO/01-0005KBS and did not know that anyone had been selected until much later.

161.    Gilbert applied for GS-14 Supervisory Customs Inspector position, vacancy number HQOFO/01-018KBS, opening date July 11, 2001.

162.    Gilbert was selected as one of the best qualified and placed on the certification list submitted to the selecting official, Tischler.

163.    Tischler selected Beverly Liefer, a non-Mexican-American female, age 36 and Dean Witmer, a non-Mexican-American male, age 46 for the vacancy.

164.    In or around August 1, 2001, just after Gilbert initiated his EEO complaint, a certification list was compiled for Vacancy Number HQOFO/01-005 KBS.

165.    Gilbert was one of nine applicants selected who made the certification list.

166.    Heinrich was listed as the selecting official.

167.    On August 30, 2001, Heinrich selected Todd Hoffman, a non-Mexican-American, 31 year old male for the position.

168.    On November 29, 2001, just before Gilbert's EEO complaint investigation was to be conducted, an additional list of best-qualified applicants was made for Vacancy Number HQOFO/01-005 KBS.

169.    Gilbert was one of the 16 best-qualified applicants.

170.    The selecting official is listed as "unknown."

171.    John Milne was selected for the vacancy.

172.    Gilbert was significantly more qualified for the position than Milne.

173.    In fact, *Gilbert, as Branch Chief, had supervised Milne in San Diego*.

174.    Upon information and belief, Jacksta had not recommended Gilbert for any of the available promotions because of his prior and ongoing protected activity, his race – Hispanic/Mexican-American, and/or his age.

175.    Upon information and belief, Heinrich did not select Gilbert because of his protected activity, his race – Hispanic/Mexican-American, and/or his age.

### Jacksta Discriminatorily Reassigns Gilbert to Reduce His Promotion Potential

176.    On July 1, 2001, Jacksta reassigned Gilbert from the Land Section to the Passenger Data Analysis Team within the Division of Passenger Programs.

177.    Jacksta stated that he made the decision to reassign personnel within the office to rotate personnel who had been at an assignment for one year, to provide personnel with the opportunity to learn other programs, and to evenly distribute office space and accommodate leave and work schedule requests.

178.    Gilbert was ordered to accept the reassignment.

179.    Younger, non-Mexican American employees without prior EEO activity – Reefe, Denning, and Bauer – were given the *option* of reassignment.

180.    Reefe had only been at his position for eight months and not the one-year that Jacksta claimed was necessary for reassignment.

181.    Another Program Officer, Timothy Van Dyke, had been assigned to his post for well over one year and had not been reassigned.

182.    Jacksta reassigned Reefe to Gilbert's former position in the Land Section in order to give Reefe the necessary experience to be promoted.

183.    Gilbert assumed Reefe's former position in the Passenger Data Analysis Team (PDAT).

184.    The Land Program was a highly visible, more prestigious assignment than the PDAT.

185.    Immediately after the transfer, Reefe was promoted to the GS-14 non-supervisory position in the Land Division.

186.    For the prior year, Gilbert had been performing the same duties at the GS-14 level that Reefe had been promoted to perform.

187.    Gilbert received only half of Reefe's prior duties, however, after joining the PDAT.

188.    Many of Reefe's responsibilities were given to Denning, a younger, white employee.

189.    By reassigning Reefe's responsibilities, Jacksta decreased Gilbert's visibility, thereby decreasing his chances for promotion.

## STATEMENT OF CLAIMS

### Count I:    Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101

190.    Gilbert incorporates paragraphs 1-189 by reference.

191.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. prohibits employers from discriminating against any employee or applicant for employment because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

192.    Under 42 U.S.C. § 2000e(3)(a), protected activity may take the form of participation in EEO proceedings, or less formal opposition.

193.    29 U.S.C. § 623(d) specifically prohibits employers from retaliating against employees who exercise their rights under the ADEA.

194.    29 C.F.R. §1614.101 makes it unlawful to discriminate against an employee because that employee has opposed any practice made illegal or participated in any stage of administrative or judicial proceedings under 42 U.S.C. 2000e-16 or 29 U.S.C. §§ 621-634.

195.    As summarized above, Jacksta and Heinrich knew of Gilbert's claims of discrimination against the Agency and retaliated against Plaintiff Gilbert for such complaints by repeatedly rejecting his applications for promotion and failing to advance them, despite his standing as the best-qualified candidate, on account of his protected activities.

196.    By retaliating against Gilbert, Defendant violated the above provisions.

197.    As a result of the retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

<strong>Count II:    Failure to Promote in Violation of Title VII<br>on Account of the Fact that Gilbert is Hispanic and/or Mexican-American</strong>

198.    Plaintiff incorporates paragraphs 1-197 by reference.

199.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. makes it unlawful for an employer to discriminate against any individual on account of his race, Hispanic or Latino (Mexican-American).

20

200.    As summarized below, Defendant refused to promote Plaintiff Gilbert for a position at the Grade 14 level despite his having been the best-qualified candidate because he is Mexican-American.

201.    As a result of the discrimination imposed upon him, Gilbert has suffered considerable injury, both financially and emotionally.

### Count III:    Failure to Promote in Violation of 29 U.S.C. §§ 621-634 on Account of Gilbert's Age

202.    Plaintiff incorporates by reference paragraphs 1-201 above.

203.    29 U.S.C. § 621 et. seq., the Age in Discrimination Employment Act, makes it unlawful for an employer to discriminate against any employee or applicant for employment age forty or older with respect to the compensation, terms, conditions, or privileges of their employment.

204.    As summarized above, Defendant discriminated against Plaintiff Gilbert by repeatedly rejecting his applications for promotion despite his being the best-qualified candidate on account of his age.

205.    As a result of the discrimination against him, Gilbert has suffered considerable injury, both financially and emotionally.

### V.    REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, Arthur Gilbert, prays that the Court grant her the following relief:

(a)    Promotion to a position to which he would have ascended to absent the retaliation and/or discrimination from which he suffered, with full backpay and benefits.

(b)    Compensatory damages, in an amount to be determined by the jury in accordance with the proof at trial, for the emotional harm caused by Defendant;

(c)    Prejudgment and postjudgment interest;

(d)    Reasonable attorneys' fees, expenses and costs;

(e)    A declaratory judgment that Defendant's conduct violated his rights and requiring the posting of notices on Defendants' premises notifying employees that Defendant has violated the anti-discrimination laws, and that employees who report future violations may not be subject to retaliation; and

(f)    Such other relief as the court shall deem just and proper.

## Jury Trial Demand

The Plaintiff demands that this case be tried by a jury.

Respectfully submitted,

THE GOLDSMITH LAW FIRM, LLC

_____

Leizer Z. Goldsmith
1900 L Street, N.W., Suite 614
Washington, D.C. 20036
Telephone: (202) 775-0040
Facsimile: (202) 318-0798
Attorneys For Plaintiff Arthur Gilbert