LEXSEE 2005 EEOPUB LEXIS 3801

Arthur Gilbert, Complainant, v. Michael Chertoff, Secretary, Department of Homeland Security, (U.S. Customs and Border Protection), Agency

Hearing No. 100-A2-7682X Appeal No. 01A42366 Agency No. 00-1236

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

*2005 EEOPUB LEXIS 3801*

August 3, 2005

**ISSUEDBY:** [*1]  For the Commission by Carlton M. Hadden, Director, Office of Federal Operations

**OPINION:**

DECISION

JURISDICTION

On February 25, 2004, complainant filed an appeal from the agency's final order concerning his equal employment opportunity (EEO) complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, *42 U.S.C. § 2000e et seq* and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, *29 U.S.C. § 621 et seq.* On appeal, complainant requests that the Commission reverse the agency's acceptance and implementation of an EEOC Administrative Judge's (AJ) finding of no discrimination in violation of Title VII and the ADEA. The appeal is deemed timely and is accepted pursuant to 29 C.F.R. § 1614.405(a). For the following reasons, the Commission AFFIRMS the agency's final order.

BACKGROUND

At the time of events giving rise to this complaint, complainant worked as a Program Officer/Customs Inspector, GS-13, at the agency's Passenger Programs in Washington, D. C. Complainant applied for a GS-14, Supervisory Customs Inspector position, [*2] vacancy number HQOFO/01-005KBS. The selection board submitted the register, along with complainant's name, to the selecting official Assistant Commissioner, Office of Field Operations (White American female, D.O. B. 2/18/45) (SO1) on May 14, 2001. SO1 selected three White American males (36, 39 and 33 years old). Other than complainant, the two other candidates who were not selected were two White American males (40 and 59 years old). Complainant was 50 at the time of the selection.

The record reveals that the agency made a second selection for vacancy number HQOFO/01-005KBS, and the names of nine candidates, along with complainant's, were placed on the selecting register submitted August 1, 2001. The selectee, a White American male, was 34 years old. The candidates who were not selected were all White Americans except for complainant and ranged in age from 33 to 59 years old. The record reveals that the selecting official (SO2) was the Deputy Assistant Commissioner (White American, D.O.B. 1/28/47). He contended that he had known of complainant for some time but complainant had never been brought to his attention as a particularly strong performer or skilled leader. Further, he stated [*3] that complainant had only a brief tenure at headquarters and needed more experience with the nature and scope of work at headquarters before he could properly assume a GS-14 supervisory position.

Complainant applied for another GS-14, Supervisory Customs Inspector position, vacancy number HQOFO/01-018KBS. The record reveals that a total of 17 candidates' names, including complainant's, were submitted on the selecting register to SO1. The record reveals that she selected two White American employees, 36 and 46 years old. Complainant was the only Hispanic candidate and the ages of the unsuccessful candidates ranged from 34 to 56 years old.

2005 EEOPUB LEXIS 3801, *

In an unsworn declaration, the SO1, stated that she had never supervised complainant and that she did not select complainant because he was not recommended by his Executive Director. All the selectees were recommended by an Executive Director or a Director. Complainant stated that the Executive Director, Passenger Programs and told him that he did not recommend him for the Customs Inspector Position in Passenger Operations because he wanted someone who had worked in the office longer.

In a statement to the investigator, the Executive Director, **[*4]** Passenger Programs stated that he told complainant that he did not recommend him for the Customs Inspector Position in Passenger Operations position because the selectee had more headquarters experience, field experience and demonstrated that he could get the job done.

In his affidavit, complainant stated that he has sufficient headquarters experience and that the agency brings in younger employees to headquarters and promotes them very quickly.

On July 12, 2001, complainant contacted an EEO counselor and filed a formal EEO complaint on September 12, 2001, alleging that the agency discriminated against him on the bases of race (Hispanic), national origin (Hispanic), age (D.O.B. 7/3/52), and in reprisal for prior EEO activity when:

> (1) he was not selected under seven GS-14, Supervisory Customs Inspector vacancy announcements between June 2000 and July 2001 (HEADQ/99-432GS, HQOFO/00-006KBS, HEADQ/00-304KBS, HEADQ00-402CAL, HQOFO/01-005KBS, HQOFO/01-018KBS);

> (2) on July 1, 2001, he was reassigned from the Land Program to the Passenger Data Analysis Team in the Office of Executive Director, Field Programs; and,

> (3) from June 2000, to June 1, 2001, he was repeatedly required to justify **[*5]** his expenses and timely submit trip reports, the Executive Director repeatedly contacted his supervisor regarding work and programs assigned to him and management excluded his name from the Port Director's Conference materials.

At the conclusion of the investigation, complainant received a copy of the investigative report and requested a hearing before an EEOC Administrative Judge (AJ). The AJ issued a decision without a hearing. With respect to issue (1) the AJ found that complainant untimely contacted the EEO counselor for the seven nonselections and dismissed his claim. The AJ found that assuming, *arguendo*, that complainant established a *prima facie* case of race and age discrimination and reprisal, the agency articulated legitimate, nondiscriminatory reasons for its actions. The AJ found that the selecting officials selected candidates who possessed more headquarters experience which would allow them to readily assume the GS-14 supervisory duties.

Concerning issue (2), the AJ found that complainant failed to show that he was aggrieved in that he retained his pay and benefits, remained in the same building, moved only one cubicle away and was placed in direct contact **[*6]** with the Executive Director of Passenger Programs.

The AJ found that the incidents raised in issue (3) failed to state a claim of discrimination. Specifically, his supervisor reminded him to submit his travel expenses in a timely manner because his credit card bill was delinquent. The Executive Director (White American, D.O.B. 5/14/57) stated that he contacted complainant's supervisor regarding his assignments because he was following the chain of command. With respect to the incident that his name was excluded from the Port Director's Conference materials, the agency stated that the omission was promptly corrected. The AJ found that complainant failed to show that this omission harmed him in any way. The AJ concluded that complainant did not establish that these incidents were sufficiently severe or pervasive to create an objectively hostile or abusive work environment.

FINAL AGENCY ACTION

The agency's final order accepted the AJ's finding that complainant was not discriminated against on the bases of his race, national origin or age or that he was retaliated against.

CONTENTIONS ON APPEAL

On appeal, complainant contends that the AJ lacked independent and objective judgement in **[*7]** that she intended to rule against complainant. As evidence of this, complainant submits a Freedom of Information request relating to the decisional activity of the AJ who found no discrimination in 98.97% of her decisions. Complainant contends that the record is not well developed in that it does not show the dates of notification to the candidates for the positions in question nor whether the selectees engaged in EEO activity. Further, complainant asserts that it is a genuine issue of material fact as to whether the agency credited complainant's headquarters experience. In response, the agency restates the position it took in its final order and requests that we affirm its final order.

STANDARD OF REVIEW

In rendering this appellate decision we must scrutinize the AJ's legal *and* factual conclusions, and the agency's final order adopting them, *de novo. See* 29 C.F.R. § 1614.405(a) (stating that a "decision on an appeal from an agency's final action shall be based on a *de novo* review . . ."); *see also* EEOC Management Directive 110, Chapter 9, § VI.B. (November 9, 1999). (providing that an AJ's "decision to issue a decision without a hearing pursuant to [29 C.F.R. § 1614.109(g)] **[*8]** will be reviewed *de novo*"). This essentially means that we should look at this case with fresh eyes. In other words, we are free to accept (if accurate) or reject (if erroneous) the AJ's and agency's, factual conclusions and legal analysis including on the ultimate fact of whether intentional discrimination occurred, and on the legal issue of whether any federal employment discrimination statute was violated. *See id.* at Chapter 9, § VI.A. (explaining that the *de novo* standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

ANALYSIS AND FINDINGS

We must first determine whether it was appropriate for the AJ to have issued a decision without a hearing on this record. The Commission's regulations allow an AJ to issue a decision without a hearing when he or she finds that there is no genuine issue of material fact in dispute. **[*9]** 29 C.F.R. 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).* In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. *Id. at 249.* The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. *Id. at 255.* An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).* A fact is "material" **[*10]** if it has the potential to affect the outcome of the case.

Finally, an AJ should not rule in favor of one party without holding a hearing unless he or she ensures that the party opposing the ruling is given (1) ample notice of the proposal to issue a decision without a hearing, (2) a comprehensive statement of the allegedly undisputed material facts, (3) the opportunity to respond to such a statement, and (4) the chance to engage in discovery before responding, if necessary. According to the Supreme Court, Rule 56 itself precludes summary judgment "where the [party opposing summary judgment] has not had the opportunity to discover information that is essential to his opposition." *Anderson, 477 U.S. at 250.* In the hearing context, this means that the administrative judge must enable the parties to engage in the amount of discovery necessary to properly respond to any motion for a decision without a hearing. *Cf.* 29 C.F.R. § 1614.109(g)(2) (suggesting that an administrative judge could order discovery, if necessary, after receiving an opposition to a motion for a decision without a hearing). If a case can only be resolved by weighing conflicting evidence, **[*11]** a hearing is required. In the context of an administrative proceeding, an AJ may properly consider issuing a decision without a hearing only after determining that the record has been adequately developed for summary disposition. *See Petty v. Department of Defense,* EEO Appeal No. 01A24206 (July 11, 2003).

With respect to complainant's contention that the AJ favored the agency, neither the evidence of record nor complainant's arguments produces a substantial showing of personal bias. *See Roberts v. Morton, 549 F.2d 158, 164 (10th Cir.*

*1977)* (substantial showing of personal bias required to obtain ruling that hearing was unfair). The previous decisions of the AJ are irrelevant to the instant case.

With respect to the AJ's dismissal of issue (1) for untimely EEO counselor contact, we find that she erred in not addressing complainant's allegations regarding his nonselection for vacancy announcement numbers HQOFO/01-005KBS and HQOFO/01-018KBS. The record reveals that three selectees were selected on May 30, 2001, under vacancy number HQOFO/01-005KBS. Complainant contacted an EEO counselor on July 12, 2001, which was within the 45-day time frame. Further, **[*12]** the record indicates that another selection register was submitted under the same vacancy announcement on August 1, 2001, under which one more selection was made. Concerning vacancy number HQOFO/01-018KBS, the record reveals that the opening date for this vacancy was on July 11, 2001. We find that complainant's claims regarding vacancy announcement numbers HQOFO/01-005KBS and HQOFO/01-018KBS are timely.

On appeal, complainant has presented no persuasive arguments or evidence warranting an extension of the time limit for initiating EEO Counselor contact with respect to vacancy numbers HEADQ/99-432GS, HEADQ/00-304KBS, HQOFO/00-006KBS and HEADQ00-402CA305KBS. The record shows that the latest selection of these four vacancy announcements was made on March 12, 2001, and his contact of the EEO counselor on July 12, 2001, was untimely.

With respect to vacancy announcement numbers HQOFO/01-005KBS and HQOFO/01-018KBS, the Commission finds that issuance of a decision without a hearing was appropriate, as no genuine dispute of material fact exists. We find that the evidence viewed in a light most favorable to complainant is sufficient to establish a *prima facie* case of race, national origin **[*13]** and age discrimination and reprisal. The selectees were uniformly White Americans and younger than complainant. In fact, only one selectee was over 40 years old. Complainant was qualified for the position and was not selected.

The agency has articulated legitimate, nondiscriminatory reasons for not selecting complainant. The agency contended that complainant lacked headquarters experience and was not a strong performer. While complainant contends that younger White American employees with less headquarters experience were routinely promoted to the GS-14 supervisory level, complainant has not shown that any of the selectee's had less headquarters experience than himself. There is no evidence in the record to support the conclusion that the legitimate reason proffered by the agency was a pretext for discrimination or reprisal.

Concerning issue 2, we find that the AJ incorrectly found that complainant was not aggrieved by his reassignment and did not state a claim. The regulation set forth at 29 C.F.R. § 1614.107(a)(1) provides, in relevant part, that an agency shall dismiss a complaint that fails to state a claim. An agency shall accept a complaint from any aggrieved employee or applicant **[*14]** for employment who believes that he or she has been discriminated against by that agency because of race, color, religion, sex, national origin, age or disabling condition. 29 C.F.R. § § 1614.103, .106(a). The Commission's federal sector case precedent has long defined an "aggrieved employee" as one who suffers a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. *Diaz v. Department of the Air Force,* EEOC Request No. 05931049 (April 21, 1994).

The only proper questions in determining whether an allegation is within the purview of the EEO process are (1) whether the complainant is an aggrieved employee and (2) whether he has alleged employment discrimination covered by the EEO statutes. An employee is "aggrieved" if he has suffered direct and personal deprivation at the hands of the employer. *See Hobson v. Department of the Navy,* EEOC Request No. 05891133 (March 2, 1990).

Here, complainant claims that he suffered race, national origin and age discrimination and reprisal when he was reassigned, from the Land Border Team to the Passenger Data Analysis Team. Complainant contends that this reassignment would limit his **[*15]** promotional prospects. Complainant's claim is sufficient to render him an aggrieved employee. Because he has alleged that the adverse action was based on race, national origin, age and in reprisal for prior EEO activity, complainant has raised a claim within the purview of the EEOC regulations.

We now address the merits of issue (2). The Executive Director stated that he transferred complainant from the Land Border Team to the Passenger Data Analysis Team. He contended that he moved employees from one office to another to provide them experience in all aspects of Passenger Programs. He stated that between July 1999 to July 2001 he has reassigned White American employees. We find that the agency has articulated a legitimate, nondiscriminatory reason

2005 EEOPUB LEXIS 3801, *

for reassigning complainant. In rebuttal, complainant stated that he was told that he was required to accept the reassignment while other employees were given the option to decline the reassignment and that the Executive Director switched his (complainant's) assignment with that of a friend's to increase his friend's chances for promotion. Even if true, we decline to find that a reasonable fact finder could conclude from this evidence **[*16]** that unlawful animus motivated the Executive Director's decision.

Issue (3) concerned an hostile work environment harassment claim based on national origin, age and in reprisal for prior EEO activity. In *Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993),* the Supreme Court reaffirmed the holding of *Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986),* that harassment is actionable if it is sufficiently severe or pervasive to alter the conditions of the complainant's employment. The Court explained that an "objectively hostile or abusive work environment [is created when] a reasonable person would find [it] hostile or abusive:" and the complainant subjectively perceives it as such. *Harris, supra at 21-22.* Thus, not all claims of harassment are actionable. Where a complaint does not challenge an agency action or inaction regarding a specific term, condition or privilege of employment, a claim of harassment is actionable only if, allegedly, the harassment to which the complainant has been subjected was sufficiently severe or pervasive to alter the conditions of the complainant's employment.

 **[*17]** Complainant's supervisor stated that complainant was tardy with his travel payments to the financial institutions for the expenses incurred during his official time. He further stated that the Executive Director contacted him on a regular basis about the assignments to his employees. The Executive Director stated that he contacted the complainant's supervisor for information on all of his employees to ensure that the work was being performed. With respect to complainant's name being excluded from the Port Director's Conference materials, complainant's supervisor stated that when this was brought to his attention by complainant the oversight was corrected. We find complainant has not alleged a pattern of persistent harassment, if true, based on his race, national origin, age or prior EEO activity that was sufficiently severe and pervasive so as to state a claim of a hostile work environment. We find that the AJ's correctly found that there was not genuine dispute of material fact existing with respect to issue (3).

Consequently, after a careful review of the record, the Commission finds that the issuance of a decision without a hearing was appropriate, as no genuine dispute of material **[*18]** fact exists. Further, construing the evidence to be most favorable to complainant, we find that complainant failed to present evidence that any of the agency's actions were motivated by unlawful discriminatory or retaliatory animus. The agency's final order is hereby AFFIRMED.

**LOAD-DATE:** August 19, 2005