## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____

**ARTHUR GILBERT,**                                  )
                                                     )
      **Plaintiff,**                              )
                                                     )
**v.**                                               ) **Civil Action No. 05-cv-2128 (RJL)**
                                                     )
**MICHAEL CHERTOFF,**                                )
**Secretary**                                        )
**Department of Homeland Security**                  )
                                                     )
      **Defendant.**                              )
_____


### FIRST AMENDED COMPLAINT

(Discrimination and Retaliation on Account of Protected EEO Activity,
Race and Age)

### I.   PARTIES

1.     Arthur Gilbert ("Gilbert") is a GS-13 Program Officer/Customs Inspector for the Department of Homeland Security ("the Department") at its Headquarters in Washington, D.C.

2.     Defendant Michael Chertoff, is the Secretary of the Department and is sued in his official capacity only.

### II.   JURISDICTION AND VENUE

3.     The Court has jurisdiction of this matter pursuant to 42 U.S.C. § 2000 et. seq and 28 U.S.C. 1331, 1343(a).

4.   Venue is proper in the District of Columbia, because this case arises out of discrimination and reprisal committed by Defendant with respect to Plaintiff's employment in this District.

### III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Gilbert filed an informal charge of discrimination with the Agency's EEO office on or about July 2, 2001, which he later supplemented.

6.      Gilbert filed a formal charge of discrimination on with the Department's EEO office on or about September 12, 2001.

7.      On January 14, 2004, Gilbert received a final decision on his claim from an Administrative Judge ("AJ") with the Equal Employment Opportunity Commission's Washington Field Office.

8.      On January 20, 2004, the Agency accepted the AJ's decision and issued a final order.

9.      On February 25, 2004, Gilbert timely appealed the AJ's decision.

10.     On August 3, 2005, the EEOC's Office of Federal Operations affirmed the AJ's decision.

11.     Therefore, Gilbert is now free to exercise his private right of action in the U.S. District Court and to obtain a trial de novo pursuant to 42 U.S.C. 2000e-16(c).

### IV.    FACTS COMPELLING A LIABILITY FINDING

#### Background

6.      Gilbert is currently a Program Officer/Customs Inspector, Grade 13, with the Department of Homeland Security.

7.      Gilbert has more than thirty years of government service, mainly in Customs, of which more than fifteen years consisted of staff-related work and field management.

8.      Gilbert is Mexican-American.

9.      Gilbert is fluent in both English and Spanish.

10.    Gilbert was born on July 3, 1952 and was over forty years old at the time of the discriminatory conduct by the Agency.

11.    Gilbert holds a Bachelor of Arts degree in Spanish and Education from San Diego State University.

### Gilbert's MSPB Complaint and Settlement Agreement

12.    In 1991 and 1996, several disgruntled subordinates of Gilbert's and Agency employees located in San Diego accused Gilbert of misconduct.

13.    Gilbert was cleared of any misconduct after investigations by all relevant authorities, including the Agency, the FBI, the DEA, and the Department of Justice.

14.    In 1993 and 1997, Gilbert filed claims alleging discrimination with the MSPB regarding the Agency's handling of the misconduct charges.

15.    Gilbert and the Agency entered into settlement agreements concerning the allegations made to the MSPB.

16.    A settlement agreement provided, _inter alia_, that Gilbert was assigned to a GS-1801-13 position in the Office of Field Operations at Agency Headquarters in Washington, D.C. as of June 5, 1998.

17.    The settlement agreement further provided that Gilbert was to receive two years of leave without pay during which time he was deemed to have received credit for two years of headquarters experience and promotion, under a gentleman's agreement.

18.    The settlement agreement directed Gilbert to report for duty in Washington D.C. on July 1, 2000.

19.    As directed by the settlement agreement, Gilbert reported for duty to the Office of Field Operations at Agency Headquarters in Washington, D.C. on July 1, 2000.

### Gilbert Has Significant Knowledge of Customs Law, Regulations and Procedures

20.     Gilbert began his career with U.S. Customs in 1977.

21.     From 1977 to date, Gilbert has performed the duties of a Customs Inspector, Senior Customs Inspector, and Customs Supervisory Inspector, and served as the Deputy Director for Inspection and Control, Branch Chief and Program Officer.

22.     Gilbert has performed the duties of an Inspector and Manager for all phases of Customs, including major Air, Land and Sea Operations.

23.     Gilbert has performed the duties of middle and higher management for over fifteen years.

24.     Gilbert has developed, modified and improved several national programs involving customs operations.

25.     While assigned to the D.C. Office of Field Operations, Gilbert assists in developing national policies, regulations, guidelines and procedures related to traveler enforcement and facilitation, under the supervision of Arthur Pitts.

26.     During his tenure as Chief Inspector/Branch Chief from 1991 to 1998 in Otay Mesa and San Ysidro, he directed and coordinated a full range of inspectional duties at the world's busiest land border crossing.

27.     At San Ysidro, Gilbert directed the operation that processed over 100,000 people and 40,000 plus vehicles daily.

28.     He also developed, improved and evaluated inspections and control operational programs while at Otay Mesa and San Ysidro.

29.     Gilbert implemented cargo security programs, free flow inspectional assignments and established a three tier targeting inspection for Customs enforcement.

### Gilbert Has Extensive Supervisory Experience

30.     During his career, Gilbert has overseen operations requiring a staff of over three hundred rotational employees and forty supervisors.

31.     From June 1984 to August 1987, Gilbert supervised over thirty employees in Los Angeles, CA.

32.     From September 1987 to March 1988, Gilbert supervised two employees while managing and implementing the Headquarters "Carrier Initiative Program" at the port of Los Angeles/Long Beach, the busiest U.S. Seaport.

33.     From 1988 to 1991, Gilbert worked as a Deputy Director, Inspection and Control in San Diego, where he performed staff work, supervised over 5 employees and acted as Director, in the Director's absence.  Gilbert and Pitts worked on district-wide projects; i.e., Special Operations, National Guard, staffing, budget, etc.

34.     From 1989 to October 1990, Gilbert had supervised approximately twenty employees as a First Line Supervisor in San Diego, CA, under the immediate supervision of Pitts.

35.     From 1991 to 1998, Gilbert worked as Branch Chief/Chief Inspector in San Diego and supervised more than 40 supervisors who supervised over 300 employees.

36.     Gilbert meets the criteria and work experience for a Grade 15 management position.

37.     Gilbert meets the criteria and work experience for a Senior Executive Service position.

### Gilbert Has Considerable Headquarters Experience or the Equivalent Of Headquarters Experience

38.    Gilbert was credited with two years Headquarters experience as a result of the settlement agreement.

39.    In addition to the credited years of Headquarters experience, he has over fifteen years equivalent of Headquarters experience.

40.    Gilbert has been detailed to work on many assignments for Headquarters throughout his career, including but not limited to: Program Analyst, Exodus Operation, Carrier Initiative Program, ~~and~~ Operation Buckstop, Firearms Program, Flight Connectors, SCANIT, MET, Recruitment Program, EEO-HEPM, and National Performance Review.

41.    These programs were headed by Headquarters and required implementation of Headquarters' policies and procedures.

42.    Gilbert implemented programs and operations under the direction of Headquarters during these assignments.

43.    Gilbert's Headquarters experience deals with writing policy, managing programs and measuring their performance for compliance, and suggesting changes as necessary.  Gilbert has been performing "successfully" for over 15 years while supervising implementation of policy and programs and producing results, as confirmed by his performance ratings received from Pitts.

### Gilbert Demonstrated Proficiency in Both Oral and Written Communication

44.    As an Operations Branch Chief at San Ysidro, Gilbert conducted Customs related business with local, state, and federal government agencies, as well as many foreign officials, that required extensive oral communications.

45.    Gilbert represented Customs as a member of the National Performance Review import matters such as implementation of High Occupancy Vehicles lanes to facilitate entry.

46.    This task required oral communication with management officials from U.S. Immigration, the State Department, the California Transportation Department, and Mexican governmental agencies.

47.    Gilbert developed and wrote policy, and conducted extensive training sessions on customs procedures involving major air, land and sea operations.

48.    As a Senior and Supervisory Inspector, Gilbert wrote standard operating procedures on inspection and release of passengers, cargo and carriers.

49.    In this position, he also wrote Public Bulletins on new Customs local policies, which were circulated to the importing community.

50.    Gilbert also wrote memoranda addressing Congressional inquiries on Customs matters.

## Gilbert Has Received Outstanding Performance Reviews Throughout His Career With Customs

51.    Gilbert has received excellent performance reviews throughout his career, including an "Outstanding" field performance rating from Pitts in 1990.

52.    For the review period July 5, 1993 to June 30, 1994, and June 1, 1994 to May 31, 1995, Gilbert received a summary performance rating of "Outstanding."

53.    For the time period of July 1, 2000 to September 30, 2000, Gilbert received the highest annual proficiency rating of "Successful", from Van Ravenswaay for Pitts.

54.    For the review period dated October 1, 2000 to September 30, 2001, Robert Jacksta, Gilbert's supervisor, rated Gilbert "successful."

55.    For the review dated October 1, 2001 to September 30, 2002, Robert Jacksta, Gilbert's supervisor, again rated Gilbert "Successful."

56.    For the review period dated October 1, 2002 to September 30, 2003, Gilbert received a "successful" rating from Manaher for Pitts.

57.    For the review period dated October 1, 2003 to September 30, 2004, Gilbert received a "successful" rating from Pitts.

58.    Jacksta has repeatedly praised Gilbert regarding the quality of his work.

59.    During his tenure as Gilbert's supervisor, Jacksta has not communicated any negative opinion regarding Gilbert's writing skills or efficiency or completion of assignments on any informal or formal, verbal or written, performance review.

### Gilbert Has Received Numerous Awards for Outstanding Performance Throughout His Career with Customs

60.    In 1985 and 1986, Gilbert received an award for his work as a Supervisory Inspector at LAX.   Additionally, in 1986 he was awarded a Commissioner's Unit Citation for his outstanding performance in "Operation Buckstop."

61.    In 1986, Gilbert received a letter of appreciation for a temporary duty assignment to Peru in which he conducted training, oversaw the development and implementation of special enforcement operations involving foreign government officials, and made oral presentations on behalf of U.S. Customs.

62.    In 1987, Gilbert received a Special Act Award.

63.    In 1990, Gilbert received an award for Outstanding Performance as a Supervisory Inspector while working in San Diego.  Gilbert received the rating and award recommendation from his supervisor, Pitts.

64.    In 1994 and 1995, Gilbert received an award for Outstanding Performance for leading the busiest and largest land border operation and achieving outstanding results as an Operations Branch Chief in San Ysidro.

65.    In 1996, Gilbert received two Special Act awards and a Commissioner's Unit Citation for his outstanding performance as Operations Branch Chief in San Ysidro.

### Gilbert Arrives at Headquarters

66.    In July 2000, pursuant to the settlement agreement, Gilbert reported for duty at the Office of Field Operations at Agency Headquarters in Washington, D.C.

67.    Gilbert was assigned to work in the Passenger Programs, Land Division as agreed.  Pitts was a Program Manager assigned to Northern Border Programs.

68.    Robert Michael Jacksta was the Director of the Passenger Programs at the time of Gilbert's assignment.

69.    When Gilbert arrived at Headquarters, he went to Jacksta's office and introduced himself to Jacksta and told him of his experience in California concerning the allegations of misconduct raised against him and Gilbert's subsequent claims of discrimination against the Agency.

70.    Gilbert told Jacksta that he wanted to make a clean start at Headquarters and get promoted, as he had been promised.

71.    Jacksta walked out of the office, barely acknowledging Gilbert's overture of good intentions.

### Jacksta Refuses to Recommend Gilbert for Promotion

72.    Over the following two years, Gilbert applied for several promotions to the GS-14 level.

73.     As Executive Director of Gilbert's division, Jacksta's recommendation was critical for Gilbert to be considered for a promotion to any vacancy.

74.     Over two years, Jacksta had approximately 19 opportunities to recommend Gilbert for a promotion.

75.     Despite the fact that Gilbert was consistently rated as one of the best-qualified for the vacancies for which he applied and had received "successful performance" ratings by both Jacksta and Pitts, Jacksta repeatedly declined to recommend Gilbert for a promotion.

76.     For example, in September of 2000, Gilbert applied for vacancy number HEADQ/00-304KBS – a Grade 14 Customers Inspector position.

77.     Gilbert was one of nine applicants selected as best-qualified for the vacancy.

78.     John Heinrich, Deputy Assistant Commissioner, a white non-Mexican-American male, was listed as the selecting official for this position.

79.     In late September and early October of 2000, Heinrich selected Sandra Hasegawa, a 49 year-old non-Mexican-American female, Kimberly Ann Nott, a 38 year old, non-Mexican -American female, Robert Colbert, a 51 year old non-Mexican-American male, and Gay Laxton, a 40 year old non-Mexican-American female.

80.     Gilbert was significantly better qualified for the position than Hasegawa, Nott, and Laxton.

81.     Laxton held only an associate's degree and had been with Customs for approximately eleven years at the time of her application.

82.    Gilbert had a bachelor's degree and more than ten years additional experience and significantly more extensive experience with Customs regulations and programs than did Laxton.

83.    Gilbert did not receive any further update, response or notification regarding his application and interview for Vacancy Announcement HEADQ/99-432GH.

84.    Gilbert did not know and had no reason to know until much later that he had not been selected for a position under this vacancy announcement and that younger, non-Mexican-American applicants had been selected rather than him.

85.    Upon information and belief, Jacksta had declined to recommend Gilbert to Heinrich despite the fact that Gilbert was the best-qualified applicant.

86.    Without a recommendation from his Executive Director, Gilbert had little or no chance of being considered for the vacancy by the selecting official.

87.    In fact, on October 27, 2000, an additional selection register for vacancy announcement number HEADQ/00-304 KBS was submitted to selecting official Heinrich.

88.    Gilbert was listed as one of the nine best-qualified candidates.

89.    On November 2, 2000, Heinrich returned the list without making any selection.

90.    Upon information and belief, Jacksta had again declined to recommend Gilbert for the vacancy despite his name's appearance on the certification list.

91.    Upon information and belief, Jacksta did not recommend Gilbert for this available position because of his discriminatory and/or retaliatory animus.

92.    Upon information and belief, Heinrich was also aware of Gilbert's prior protected activity before being assigned to Headquarters.

93.    Upon information and belief, Heinrich did not select Gilbert for the promotion because of his discriminatory and/or retaliatory animus.

94.    Gilbert did not receive any notice that Heinrich had declined to make a selection from the best-qualified list and did not learn until much later that no selection had been made.

**Jacksta Continues His Pattern Of Refusing to Recommend Gilbert For a Promotion**

95.    In April 2001, Gilbert applied for vacancy number HQOFO/01-005KBS, Grade 14 Customs Inspector.

96.    Gilbert was selected as one of the five best qualified applicants and placed on the certification list submitted to the selecting official, Assistant Commissioner Bonni G. Tischler, a non-Mexican American female who was approximately 55 years old.

97.    On May 30, 2001, Tischler selected Edward Moriarty, (non-Mexican-American, 36 years old), Robert Schotens (non-Mexican-American, 39 years old), and John Wagner (non-Mexican-American, 33 years old).

98.    Gilbert had significantly more Customs knowledge and experience and management experience than Moriarty, Schotens, and Wagner,

99.    Scholtens and Wagner had only approximately ten years with Customs. In 2005, Wagner was promoted to GS-15 Director of Automation Programs (supervisory position) in Headquarters, without ever holding or performing supervisory duties.

100.    Gilbert had over twenty years experience in Customs.

101.    In fact, Gilbert's time in Grade 13 was longer than the total Customs time in service of Moriarty, Schotens, and Wagner.

102.    In or around June 2001, another selection list was generated for Vacancy Number HQOFO/01-005 KBS.

103.    Gilbert again made the certification list as one of seven best-qualified applicants.

104.    The list was submitted to Tischler as the selecting official on June 22, 2001.

105.    Tischler selected Mark Reefe, a 32 year old non-Mexican American, for the vacancy.   A year later, Reefe received a promotion equivalent to a GS-15, with TSA.

106.    On July 1, 2001, Jacksta called Gilbert into his office and admitted that Jacksta had not recommended Gilbert for a position under Vacancy Number HQOFO/01-005 KBS.

107.    Jacksta stated, "I selected someone that has been here longer."

108.    Jacksta stated: "Last list I promoted Tony Van Ravenswaay and I did not know you were on the list."

109.    Jacksta told Gilbert that he had been doing a good job and if he continued to do a good job and he would get receive a promotion.

110.    Prior to his conversation with Jacksta, Gilbert did not know and had no reason to know that he was not selected for the available positions and was not aware that he had been the victim of discrimination and/or retaliation.

111.    Tischler, who is now deceased, averred before her death that she relied upon recommendations in making her selection.

**Gilbert's EEO Complaint and Investigation into His Allegations
Of Discrimination and Retaliation**

112.    Pursuant to 29 C.F.R. §1614.105(a), Gilbert contacted an EEO counselor on July 2, 2001, regarding his non-selection after he learned from Jacksta that he had not been selected for any of the available HQOFO/01-005KBS positions.

113.    Gilbert filed a formal charge of discrimination on with the Department's EEO office on or about September 12, 2001.

114.    An EEO investigation into Gilbert's charges occurred from January 7 through January 11, 2002.

115.    In the course of the investigation, Tischler stated that she relied on the recommendations from Executive Directors in the program area where the applicant was placed when making her selection.

116.    Jacksta stated that he did not recommend Gilbert for a promotion because Gilbert needed to improve his writing skills, be more efficient at getting his work done and complete his work in a timely manner.

~~117.~~    Before the EEO investigation, Jacksta had never criticized Gilbert's performance, and has repeatedly praised Gilbert regarding the quality of his work.

~~118.~~    As stated above, for the time period of July 1, 2000 to September 30, 2000, Gilbert received the highest annual proficiency rating of "Successful" – the highest rating available on the review form.

~~119.~~    For the review dated October 1, 2001 to September 30, 2002, ~~Arthur Pitts~~ Gilbert was again rated "successful."

120.    Jacksta participated in the rating.

121.    During his tenure as Gilbert's supervisor, Jacksta has not communicated any negative opinion regarding Gilbert's writing skills or efficiency or completion of assignments on any informal or formal, verbal or written, performance review.

122.    During the investigation, Heinrich stated that he relied on the information provided by Human Resources, his experience within the Agency and the recommendations from the Executive Directors when making the selection.

123.    Heinrich further stated that Gilbert had not been recommended by any of the official in the Office of Field Operations and that although he knew Gilbert, Gilbert had not been brought to his attention as a particularly strong performer or skilled leader.

124.    Heinrich also stated that Gilbert needed more Headquarters experience before he could receive a promotion.

125.    As stated above, Gilbert had consistently received outstanding performance reviews from his first line supervisors Jacksta and Pitts.

126.    Gilbert was exceedingly more qualified than the selectee for the position.

## Gilbert Applies For and Is Continually Denied Promotions
## While Assigned to Headquarters

127.    In addition to the promotions discussed above, Jacksta declined to recommend Gilbert for several additional vacancies.

128.    For example, in September 2000, just a few short months after Gilbert's discussion with Jacksta regarding his prior EEO activity, Gilbert applied for vacancy number HEADQ/00-305 KBS Supervisory Field Operations Specialist, Grade 14.

129.    Gilbert was ranked as the best qualified of the thirteen applicants chosen for the Best Qualified List (BQL).

130.    Tischler was the selecting official for this vacancy.

131.    On November 15, 2000, Tischler selected Mirtha Gonzalez, a 34 year-old, non-Mexican-American female for the position.

132.    Gonzalez was ranked lower than Gilbert in the rating criteria.

133.    Gilbert had over sixteen years' more experience with Customs, including experience in supervisory position, than did Gonzalez who had only been with Customs since 1992 and had only held a supervisory position since August of 2000.

134.    In fact, Gonzalez had worked as a **Paralegal Specialist** and not a Customs Agent for approximately five years of her employment with Customs!

135.    Gilbert never received any further response regarding his application for vacancy number HEADQ/00-305 KBS and did not know until much later that he had not been recommended or selected for the promotion.

136.    In December of 2000, Gilbert applied for vacancy number HEADQ/00-402CAL – Grade 13/14 Customs Inspector.

137.    Gilbert, Michael Jackson, age 59 and Grady Tipton, age 53, both non-Mexican-American, were among the ten best-qualified applicants submitted to the selecting official, Tischler.

138.    On March 9, 2001, Tischler selected Jackson and Tipton for the vacancies.

139.    Tipton had only been employed by Customs since 1994 and had worked for a sheriff's department for approximately 20 years before joining the agency.

140.    **Gilbert, as Branch Chief, had previously supervised Jackson,** as his first line supervisor in the field in San Diego.

141.    Gilbert had significantly more experience with Customs regulations and enforcement than did Tipton at the time of the selection.

142. Gilbert never received any notification that he was not selected or that another applicant had been selected for the vacancy until much later after the selection had been made.

143. On January 25, 2001, the selection register was again submitted to Heinrich for vacancy number HEADQ/00-304 KBS, Grade 14 Customs Inspector.

144. Gilbert again made the Best Qualified List.

145. On February 14, 2001, Heinrich selected Robert Michaud, a 54 year-old non-Mexican American male with no prior EEO activity, for the vacancy.

146. On March 22, 2001, the selection register for HEADQ/00-304 KBS was submitted to selecting official Tischler.

147. Gilbert was again selected as one of eleven best-qualified candidates.

148. Tischler selected Glenn Ross, a non-Mexican American male with no prior EEO activity, age 47, for the position.

149. Gilbert applied for vacancy announcement HQOFO/00-006KBS, Grade 14 Supervisory Field Operations Specialist.

150. Yvonne Acosta-Hagans, age 35, non-Mexican-American, and Gilbert made the best-qualified list.

151. Upon information and belief, Heinrich selected Acosta-Hagans for the position on July 5, 2001.

152. Gilbert was exceedingly more qualified than Acosta-Hagans for the vacancy.

153. Acosta-Hagans had been employed as a Paralegal Specialist from 1989 to 1999.

154.    She had only been a Field Operations Specialist, Grade 13 since January 17, 2000 when she received the promotion.

155.    Gilbert's application reflects that he had worked for customs since 1977 and had held the position of Customs Inspector at major air, land and sea operations from 1977 to 1983, Senior Customs Inspector at major air and sea operations from 1983 to 1984, Supervisory Customs Inspector at major air, land and sea operations from 1984 to 1991, and served as District Deputy Director Inspection and Control from 1989 to 1991.

156.    Gilbert had also served as Chief Inspector and Branch Chief at major cargo and passenger operations, from 1991-1998.

157.    Acosta-Hagans had only approximately one year of supervisory experience at the time of her application.

158.    Gilbert had more than ten times the supervisory experience of Acosta-Hagans.

159.    Gilbert has never been informed by the Human Resources Office or anyone at the Agency of the status of his application for vacancy number HQOFO/01-0005KBS and did not know that anyone had been selected until much later.

160.    Gilbert applied for GS-14 Supervisory Customs Inspector position, vacancy number HQOFO/01-018KBS, opening date July 11, 2001.

161.    Gilbert was selected as one of the best qualified and placed on the certification list submitted to the selecting official, Tischler.

162.    Tischler selected Beverly Leifer, a non-Mexican-American female, age 36 and Dean Witmer, a non-Mexican-American male, age 46 for the vacancy.

163.     In or around August 1, 2001, just after Gilbert initiated his EEO complaint, a certification list was compiled for Vacancy Number HQOFO/01-005 KBS.

164.     Gilbert was one of nine applicants selected who made the certification list.

165.     Heinrich was listed as the selecting official.

166.     On August 30, 2001, Heinrich selected Todd Hoffman, a non-Mexican-American, 31 year old male for the position.

167.     On November 29, 2001, just before Gilbert's EEO complaint investigation was to be conducted, an additional list of best-qualified applicants was made for Vacancy Number HQOFO/01-005 KBS.

168.     Gilbert was one of the 16 best-qualified applicants.

169.     The selecting official is listed as "unknown."

170.     John Milne was selected for the vacancy.

171.     Gilbert was significantly more qualified for the position than Milne.

172.     In fact, **Gilbert, as Branch Chief, had supervised Milne as a second line supervisor in San Diego**.  Upon information and belief, Jacksta had not recommended Gilbert for any of the available promotions because of his prior and ongoing protected activity, his race – Hispanic/Mexican-American, and/or his age.

173.     Upon information and belief, Heinrich did not select Gilbert because of his protected activity, his race – Hispanic/Mexican-American, and/or his age.

### Jacksta Discriminatorily Reassigns Gilbert to Reduce His Promotion Potential

174.     On July 1, 2001, Jacksta, as a third line supervisor reassigned Gilbert from the Land Section to the Passenger Data Analysis Team (PDAT) within the Division of Passenger Programs.  Prior to the reassignment, Gilbert worked for Pitts.

175.    Jacksta stated that he made the decision to reassign personnel within the office to rotate personnel who had been at an assignment for one year, to provide personnel with the opportunity to learn other programs, and to evenly distribute office space and accommodate leave and work schedule requests.

176.    Gilbert was ordered by Jacksta to accept the reassignment.  In PDAT, Jacksta became Gilbert's first line supervisor.

177.    Younger, non-Mexican American employees without prior EEO activity – Reefe, Denning, and Bauer – were given the *option* of reassignment by Jacksta.

178.    Reefe had only been at his position for eight months and not the one-year that Jacksta claimed was necessary for reassignment.

179.    Another Program Officer, Timothy Van Dyke, had been assigned to his post since 1999, well over one year, and had not been reassigned.

180.    Jacksta reassigned Reefe to Gilbert's former position in the Land Section in order to give Reefe the exposure and necessary experience to be promoted.  Reefe's new supervisor was Pitts.

181.    Gilbert assumed Reefe's former position in the Passenger Data Analysis Team (PDAT) and was supervised by Jacksta.

182.    The Land Program was a highly visible, more prestigious assignment than the PDAT and was supervised by Pitts.

183.    Immediately after the transfer, Reefe was promoted to the GS-14 non-supervisory position in the Land Division.

184.    For the prior year, Gilbert was supervised by Pitts and had been performing the same duties at the GS-14 level that Reefe had been promoted to perform.

185.    Gilbert received only half of Reefe's prior duties, however, after joining the PDAT.  Many of Reefe's responsibilities were given to Denning, a younger, white employee.

186.    By reassigning Reefe's responsibilities, Jacksta decreased Gilbert's visibility, thereby decreasing his chances for promotion.

## V.    STATEMENT OF CLAIMS

**Count I:     Retaliatory Failure to Promote For Engaging in Activities
Protected by Title VII, the Age Discrimination in Employment Act
(ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote
In Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age,
And Discriminatory Failure To Promote In Violation of Title VII
(42 U.S.C. 2000e et seq.), on Account of the Fact
That Gilbert is Hispanic and/or Mexican-American,
By Failing To Select Gilbert  for a GS-14 Position
Under Vacancy Announcement HQOFO/01-005 on May 30, 2001,
In Favor Of Edward Moriarty, Robert Schotens, and John Wagner**

187.    Gilbert incorporates paragraphs 1-186 by reference.

188.    Gilbert applied for a GS-14 position under Vacancy Announcement HQOFO/01-005.

**189.**     Six less qualified, younger, non-Mexican American applicants without prior protected activity were selected for the available positions in 2001.  See (Complaint ¶¶ 96-112).

190.    Specifically, Edward Moriarty, Robert Schotens, and John Wagner, were selected in lieu of Gilbert.

191.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. prohibits employers from discriminating against any employee or applicant for employment on account of national origin.

192.    Title VII also forbids discrimination against an employee because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

193.    Under 42 U.S.C. § 2000e(3)(a), this protected activity may take the form of participation in EEO proceedings, or less formal opposition.

194.    The Age Discrimination in Employment Act specifically prohibits employers from discriminating against employees because of their age.

195.    29 U.S.C. § 623(d) specifically prohibits employers from retaliating against employees who exercise their rights under the ADEA.

196.    29 C.F.R. §1614.101 makes it unlawful to discriminate against an employee because that employee has opposed any practice made illegal or participated in any stage of administrative or judicial proceedings under 42 U.S.C. 2000e-16 or 29 U.S.C. §§ 621-634.

197.    As summarized above, Tischler and Heinrich knew of Gilbert's claims of discrimination against the Agency.  They discriminated against Plaintiff Gilbert on account of his age and national origin, and retaliated against him for his complaints, by rejecting his applications for promotion under HQOFO/01-005 in favor of Edward Moriarty, Robert Schotens, and John Wagner, and failing to advance, despite Gilbert's standing as the best-qualified candidate.

198.    By discriminating and retaliating against Gilbert, Defendant violated the above provisions.

199.    As a result of the retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count II:     Retaliatory Failure to Promote For Engaging in Activities
Protected by Title VII, the Age Discrimination in Employment Act
(ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote
in Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age,
And Discriminatory Failure To Promote In Violation of Title VII
(42 U.S.C. 2000e et seq.), on Account of the Fact
That Gilbert is Hispanic and/or Mexican-American,
By Failing To Select Gilbert  for a GS-14 Position
Under Vacancy Announcement HQOFO/01-005, In Favor Of Mark Reefe**

200.     Gilbert incorporates paragraphs 1-199 by reference.

201.     Gilbert applied for a GS-14 position under Vacancy Announcement
HQOFO/01-005.

202.      Six less qualified, younger, non-Mexican American applicants without
prior protected activity were selected for the available positions in 2001.  See (Complaint
¶¶ 96-112).

203.     Specifically, Mark Reefe was selected in lieu of Gilbert

204.      Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. prohibits
employers from discriminating against any employee or applicant for employment on
account of national origin.

205.     Title VII also forbids discrimination against an employee because he has
opposed any practice made an unlawful employment practice by this subchapter, or
because he has made a charge, testified, assisted or participated in any manner in an
investigation, proceeding, or hearing under this subchapter.

206.     Under 42 U.S.C. § 2000e(3)(a), this protected activity may take the form of
participation in EEO proceedings, or less formal opposition.

207.     The Age Discrimination in Employment Act specifically prohibits
employers from discriminating against employees because of their age.

208.     29 U.S.C. § 623(d) specifically prohibits employers from retaliating against employees who exercise their rights under the ADEA.

209.     29 C.F.R. §1614.101 makes it unlawful to discriminate against an employee because that employee has opposed any practice made illegal or participated in any stage of administrative or judicial proceedings under 42 U.S.C. 2000e-16 or 29 U.S.C. §§ 621-634.

210.     As summarized above, Tischler and Heinrich knew of Gilbert's claims of discrimination against the Agency.  They discriminated against Plaintiff Gilbert on account of his age and national origin, and retaliated against him for his complaints, by rejecting his applications for promotion under HQOFO/01-005 in favor of Mark Reefe, and failing to advance, despite his standing as the best-qualified candidate.

211.     By discriminating and retaliating against Gilbert, Defendant violated the above provisions.

212.     As a result of the retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count III:     Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote in Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age, And Discriminatory Failure To Promote In Violation of Title VII (42 U.S.C. 2000e et seq.), on Account of the Fact That Gilbert is Hispanic and/or Mexican-American, By Failing To Select Gilbert  for a GS-14 Position Under Vacancy Announcement HQOFO/01-005, In Favor Of John Milne**

213.     Gilbert incorporates paragraphs 1-212 by reference.

214.     Gilbert applied for a GS-14 position under Vacancy Announcement HQOFO/01-005.

215.     Six less qualified, younger, non-Mexican American applicants without prior protected activity were selected for the available positions in 2001.  See (Complaint ¶¶ 96-112).

216.     Specifically, John Milne was selected in lieu of Gilbert after November 29, 2001.

217.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. prohibits employers from discriminating against any employee or applicant for employment on account of national origin.

218.     Title VII also forbids discrimination against an employee because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

219.     Under 42 U.S.C. § 2000e(3)(a), this protected activity may take the form of participation in EEO proceedings, or less formal opposition.

220.     The Age Discrimination in Employment Act specifically prohibits employers from discriminating against employees because of their age.

221.     29 U.S.C. § 623(d) specifically prohibits employers from retaliating against employees who exercise their rights under the ADEA.

222.     29 C.F.R. §1614.101 makes it unlawful to discriminate against an employee because that employee has opposed any practice made illegal or participated in any stage of administrative or judicial proceedings under 42 U.S.C. 2000e-16 or 29 U.S.C. §§ 621-634.

223.     As summarized above, Tischler and Heinrich knew of Gilbert's claims of discrimination against the Agency.  They discriminated against Plaintiff Gilbert on

account of his age and national origin, and retaliated against him for his complaints, by rejecting his applications for promotion under HQOFO/01-005 in favor of John Milne, and failing to advance, despite his standing as the best-qualified candidate.

224.    By discriminating and retaliating against Gilbert, Defendant violated the above provisions.

225.    As a result of the retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count IV:    Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote In Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age, And Discriminatory Failure To Promote In Violation of Title VII (42 U.S.C. 2000e et seq.), on Account of the Fact That Gilbert is Hispanic and/or Mexican-American, By Failing To Select Gilbert  for a GS-14 Position Under Vacancy Announcement HQOFO/01-005, In Favor Of Todd Hoffman**

226.    Gilbert incorporates paragraphs 1-225 by reference.

227.    Gilbert applied for a GS-14 position under Vacancy Announcement HQOFO/01-005.

228.     Six less qualified, younger, non-Mexican American applicants without prior protected activity were selected for the available positions in 2001.  See (Complaint ¶¶ 96-112).

229.    Specifically, Todd Hoffman was selected in lieu of Gilbert on August 30, 2001, by Heinrich.

230.    As summarized above, Tischler and Heinrich knew of Gilbert's claims of discrimination against the Agency.  They discriminated against Plaintiff Gilbert on account of his age and national origin, and retaliated against him for his complaints, by

rejecting his applications for promotion under HQOFO/01-005 in favor of John Milne, and failing to advance, despite his standing as the best-qualified candidate.

231.    By discriminating and retaliating against Gilbert, Defendant violated the provisions listed in Count Three.

232.    As a result of the retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count V:    Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote in Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age, And Discriminatory Failure To Promote In Violation of Title VII (42 U.S.C. 2000e et seq.), on Account of the Fact that Gilbert is Hispanic and/or Mexican-American, By Failing To Select Gilbert for a GS-14 Position Under Vacancy Announcement HQOFO/00-006KBS**

233.    Gilbert incorporates paragraphs 1-232 by reference.

234.    Gilbert applied for a GS-14 position under Vacancy Announcement HQOFO/01-006.

235.     A less qualified, significantly younger, non-Mexican American applicant without prior protected activity—Yvonne Acosta-Hagans-- was selected for the available position (See Complaint ¶¶ 150-160) on July 5, 2001.

236.    As summarized above, Jacksta and Heinrich knew of Gilbert's claims of discrimination against the Agency.  They discriminated against Gilbert on account of his status, and retaliated against Gilbert for protesting, by rejecting his application for promotion under Vacancy Announcement HQOFO/01-006, and failing to advance his application, despite Gilbert's standing as the best-qualified candidate.

237.    By discriminating and retaliating against Gilbert, Defendant violated the applicable statutory provisions outlined above.

238.    As a result of the discrimination and retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count VI:    Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote in Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age, And Discriminatory Failure To Promote In Violation of Title VII (42 U.S.C. 2000e et seq.), on Account of the Fact that Gilbert is Hispanic and/or Mexican-American, By Failing To Select Gilbert for a GS-14 Position Under Vacancy Announcement HQOFO/01-018KBS, In Favor Of Beverly Leifer**

239.    Gilbert incorporates paragraphs 1-238 by reference.

240.    Gilbert applied for a GS-14 position under Vacancy Announcement HQOFO/01-018KBS in 2001 for Grade 14 Supervisory Field Operations Specialist position.

241.    Two less qualified, significantly younger, non-Mexican American applicants without prior protected activity were selected for the available positions.

242.    Jacksta did not recommend Gilbert to Tischler, who was the selecting official.

243.    Less qualified, significantly younger, non-Mexican American applicants were selected, including Beverly Leifer.

244.    As summarized above, Tischler knew of Gilbert's claims of discrimination against the Agency and retaliated against Plaintiff Gilbert for such complaints by repeatedly rejecting his application for promotion and failing to advance it, despite his standing as the best-qualified candidate, on account of his status and his protected activities.

245.    By discriminating and retaliating against Gilbert with regard to Gilbert's application under Vacancy Announcement HQOFO/01-018KBS, Defendant violated the above-identified statutory provisions.

246.    As a result of the discrimination and retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count VII:    Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote in Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age, And Discriminatory Failure To Promote In Violation of Title VII (42 U.S.C. 2000e et seq.), on Account of the Fact that Gilbert is Hispanic and/or Mexican-American, By Failing To Select Gilbert for a GS-14 Position Under Vacancy Announcement HQOFO/01-018KBS, In Favor Of Dean Witmer**

247.    Gilbert incorporates paragraphs 1-246 by reference.

248.    Gilbert applied for a GS-14 position under Vacancy Announcement HQOFO/01-018KBS in 2001 for Grade 14 Supervisory Field Operations Specialist position, which opened for competition in July 2001.

249.    Two less qualified, significantly younger, non-Mexican American applicants without prior protected activity were selected for the available positions.

250.    Jacksta did not recommend Gilbert to Tischler, who was the selecting official.

251.    Less qualified, significantly younger, non-Mexican American applicants were selected, including Dean Witmer.

252.    As summarized above, Tischler knew of Gilbert's claims of discrimination against the Agency and retaliated against Plaintiff Gilbert for such complaints by repeatedly rejecting his application for promotion and failing to advance it, despite his standing as the best-qualified candidate, on account of his status and his protected activities.

253.    By discriminating and retaliating against Gilbert with regard to Gilbert's application under Vacancy Announcement HQOFO/01-018KBS, Defendant violated the above-identified statutory provisions.

254.    As a result of the discrimination and retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count VIII:    Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, Discriminatory Failure to Promote in Violation of 29 U.S.C. §§ 621-634, on Account of Gilbert's Age, And Discriminatory Failure To Promote In Violation of Title VII (42 U.S.C. 2000e et seq.), on Account of the Fact that Gilbert is Hispanic and/or Mexican-American, By Failing To Select Gilbert for a GS-14 Position Under Vacancy Announcement HQOFO/01-018KBS, In Favor Of Beverly Leifer**

255.    Gilbert incorporates paragraphs 1-254 by reference.

256.    Gilbert applied for a GS-14 position under Vacancy Announcement HQOFO/01-018KBS in 2001 for Grade 14 Supervisory Field Operations Specialist position, which opened for competition in July 2001.

257.     Two less qualified, significantly younger, non-Mexican American applicants without prior protected activity were selected for the available positions.

258.    Jacksta did not recommend Gilbert to Tischler, who was the selecting official.

259.    Less qualified, significantly younger, non-Mexican American applicants were selected, including Beverly Leifer.

260.    As summarized above, Tischler knew of Gilbert's claims of discrimination against the Agency and retaliated against Plaintiff Gilbert for such complaints by repeatedly rejecting his application for promotion and failing to advance it, despite his standing as the best-qualified candidate, on account of his status and his protected activities.

261.    By discriminating and retaliating against Gilbert with regard to Gilbert's application under Vacancy Announcement HQOFO/01-018KBS, Defendant violated the above-identified statutory provisions.

262.    As a result of the discrimination and retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count IX:**    **Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, By Failing To Select Gilbert for a GS-14 position under Vacancy Announcement HEADQ/00-304KBS, In Favor Of Sandra Hasegawa**

263.    Gilbert incorporates paragraphs 1-262 by reference.

264.    In 2000, Gilbert applied for the position of a Grade 14 Customers Inspector.

265.    Gilbert was highly qualified for the position.

266.    Multiple selections under this announcement were made by Heinrich and Tischler in 2000 and 2001.

267.    The selectees were non Mexican-American, mostly younger and did not have prior EEO activity, including Sandra Hasegawa, who was selected on October 27, 2000.

268.    As summarized above, Heinrich and Tischler knew of Gilbert's claims of discrimination against the Agency and retaliated against Plaintiff Gilbert for such complaints by rejecting his application for promotion under Vacancy Announcement No. HEADQ/00-304KBS and failing to advance it, despite Gilbert's standing as the best-qualified candidate, on account of his status and protected activities.

269.    Gilbert was never directly provided with any notice of this selection, but learned about it through his own investigation after his meeting with Jacksta in July 2001.

270.    By retaliating against Gilbert, Defendant violated the above-described provisions.

271.    As a result of the retaliation against him, Gilbert has suffered

considerable injury, both financially and emotionally.

**Count X:      Retaliatory Failure to Promote For Engaging in Activities
Protected by Title VII, the Age Discrimination in Employment Act
(ADEA), and 29 C.F.R. §1614.101, By Failing To Select Gilbert for a GS-14 position
under Vacancy Announcement HEADQ/00-304KBS, In Favor Of Kim Knott**

272.    Gilbert incorporates paragraphs 1-271 by reference.

273.    In 2000, Gilbert applied for the position of a Grade 14 Customers

Inspector.

274.    Gilbert was highly qualified for the position.

275.    Multiple selections under this announcement were made by Heinrich and

Tischler in 2000 and 2001, including Kim Knott.

276.    The selectees were non Mexican-American, mostly younger and did not

have prior EEO activity, including Kim Knott, who was selected on November 2, 2000.

277.    As summarized above, Heinrich and Tischler knew of Gilbert's claims of

discrimination against the Agency and retaliated against Plaintiff Gilbert for such

complaints by rejecting his application for promotion under Vacancy Announcement

No. HEADQ/00-304KBS and failing to advance it, despite Gilbert's standing as the best-

qualified candidate, on account of his status and protected activities.

278.    By retaliating against Gilbert, Defendant violated the above-described

provisions.

279.    Gilbert was never directly provided with any notice of this selection, but

learned about it through his own investigation after his meeting with Jacksta in July

2001.

280.    As a result of the retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

**Count XI:    Retaliatory Failure to Promote For Engaging in Activities Protected by Title VII, the Age Discrimination in Employment Act (ADEA), and 29 C.F.R. §1614.101, By Failing To Select Gilbert for a GS-14 position under Vacancy Announcement HEADQ/00-304KBS, In Favor Of Gary Laxton**

281.    Gilbert incorporates paragraphs 1-280 by reference.

282.    In 2000, Gilbert applied for the position of a Grade 14 Customers Inspector.

283.    Gilbert was highly qualified for the position.

284.    Multiple selections under this announcement were made by Heinrich and Tischler in 2000 and 2001, including Gary Laxton.

285.    The selectees were non Mexican-American, mostly younger and did not have prior EEO activity, including Gary Laxton, who was selected on May 4, 2001.

286.    As summarized above, Heinrich and Tischler knew of Gilbert's claims of discrimination against the Agency and retaliated against Plaintiff Gilbert for such complaints by rejecting his application for promotion under Vacancy Announcement No. HEADQ/00-304KBS and failing to advance it, despite Gilbert's standing as the best-qualified candidate, on account of his status and protected activities.

287.    By retaliating against Gilbert, Defendant violated the above-described provisions.

288.    Gilbert was never directly provided with any notice of this selection, but learned about it through his own investigation after his meeting with Jacksta in July 2001.

289.    As a result of the retaliation against him, Gilbert has suffered

considerable injury, both financially and emotionally.

**Count XII:    Retaliatory Failure to Promote For Engaging in Activities
Protected by Title VII, the Age Discrimination in Employment Act
(ADEA), and 29 C.F.R. §1614.101, By Failing To Select Gilbert for a GS-14 position
under Vacancy Announcement HEADQ/00-304KBS,
In Favor Of Making No Selection At All**

290.    Gilbert incorporates paragraphs 1-289 by reference.

291.    In 2000, Gilbert applied for the position of a Grade 14 Customers

Inspector.

292.    Gilbert was highly qualified for the position.

293.    Multiple selections under this announcement were made by Heinrich and

Tischler in 2000 and 2001.

294.    The selectees were non Mexican-American, mostly younger and did not

have prior EEO activity.

295.    On one occasion, as summarized above, Heinrich returned the

certification list that contained Gilbert's name on it without making any selection at all.

296.    As summarized above, Heinrich and Tischler knew of Gilbert's claims of

discrimination against the Agency and retaliated against Plaintiff Gilbert for such

complaints by rejecting his application for promotion under Vacancy Announcement

No. HEADQ/00-304KBS and failing to advance it, despite Gilbert's standing as the best-

qualified candidate, on account of his status and protected activities.

297.    By retaliating against Gilbert, Defendant violated the above-described

provisions.

298.    Gilbert was never directly provided with any notice of this non-selection, but learned about it through his own investigation after his meeting with Jacksta in July 2001.

299.    As a result of the retaliation against him, Gilbert has suffered considerable injury, both financially and emotionally.

## VI.    REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, Arthur Gilbert, prays that the Court grant him the following relief:

(a)    Promotion to a position to which he would have ascended to absent the retaliation and/or discrimination from which he suffered, with full backpay and benefits.

(b)    Compensatory damages, in an amount to be determined by the jury in accordance with the proof at trial, for the emotional harm caused by Defendant;

(c)    Prejudgment and post judgment interest;

(d)    Reasonable attorneys' fees, expenses and costs;

(e)    Compensation for use of Foreign Language under the Foreign Language Awards Program (FLAP) and agreement at the S-5 level;

(f)    Restoration of all leave used in connection to the case;

(g)    Reimbursement for all expenses incurred related to the case;

(h)    All awards that Gilbert missed the opportunity of receiving due to the ongoing retaliation;

(i)    A declaratory judgment that Defendant's conduct violated his rights and requiring the posting of notices on Defendants' premises notifying employees that

Defendant has violated the anti-discrimination laws, and that employees who report future violations may not be subject to retaliation; and

      (j)      Such other relief as the court shall deem just and proper.

### Jury Trial Demand

The Plaintiff demands that this case be tried by a jury.

Respectfully submitted,

THE GOLDSMITH LAW FIRM, LLC


_____
Leizer Z. Goldsmith  (D.C. Bar No. 419544)
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20015
Telephone: (202) 195-1506
Facsimile:   (202) 318-0798