UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| ARTHUR GILBERT, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Case No. 05-2128 (RJL) |
| JANET NAPOLITANO, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION
(January **12**, 2011) [#66]

Plaintiff Arthur Gilbert ("plaintiff" or "Gilbert") brings this action against Janet Napolitano in her official capacity as Secretary of Homeland Security. He alleges that his former employer, the U.S. Customs and Border Protection ("CBP"), a unit of the Department of Homeland Security, engaged in discrimination and retaliation based on race, age, and prior EEO activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Currently before the Court is the defendant's Motion for Summary Judgment. Upon consideration of the pleadings, relevant law, and the entire record, the motion is GRANTED.

## BACKGROUND

Gilbert is an American of Mexican descent who was born in 1952. Pl.'s Opp'n to Def.'s Stmt of Mat. Facts ("Pl.'s Opp'n to SMF") ¶1.[1] From approximately 1977 until

---

[1] As a preliminary matter, plaintiff's statement of material facts fails to comply with Local Rule 7(h), which requires a party opposing a motion for summary judgment to file

1

1997, plaintiff worked in various CBP field offices. *See, e.g.,* Def.'s Ex. A at 23-24. In October 1997, CBP removed plaintiff from his position as a GS-13 Supervisory Customs Inspector in San Ysidro, California, in connection with allegations of misconduct in the handling of a cocaine seizure. Pl.'s Opp'n to SMF ¶3. Plaintiff appealed that action to the Merit Systems Protection Board, and ultimately settled his appeal with CBP on June 5, 1998. *Id.* ¶¶4-5; *see also* Def.'s Ex. B. As part of the settlement agreement, plaintiff was reinstated and assigned to a GS-13 position in the Office of Field Operations ("OFO") at CBP Headquarters ("Headquarters") in Washington, D.C. Def.'s Ex. B at 2-3. Though Gilbert's reinstatement was as of June 5, 1998, he was not required to report to Headquarters until July 1, 2000. *Id.* Gilbert was permitted to use a mix of sick leave, annual leave, and leave without pay between June 5, 1998 and July 1, 2000. *Id.*

Upon his arrival at Headquarters on July 1, 2000, Gilbert was assigned to work for Robert Jacksta in the Land Division of Passenger Programs. Gilbert Dep. 9:9-11:6, May

---

"a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to parts of the record relied on to support the statement." In support of his opposition, Gilbert has filed a statement of 758 facts he contends are material and disputed. Pl.'s Ex. 67. However, many of those "facts" are neither material nor disputed. The purpose of Rule 7(h) is to "place[] the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Robertson v. American Airlines, Inc.*, 239 F. Supp. 2d 5, 7 (D.D.C. 2002) (quoting *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996). Both the movant and the non-movant bear this burden, and "[b]ecause the rule helps the district court maintain docket control and decide motions for summary judgment efficiently, the D.C. Circuit has repeatedly upheld district court rulings that hold parties to strict compliance with this rule." *Id.* at 8 (citations omitted). Accordingly, the Court will adopt the defendant's suggestion and strike Pl.'s Ex. 67.

13, 2009. Though disputed by the parties, according to plaintiff, he immediately informed Jacksta of his prior EEO activity. *Id.* 11:24-12:8.

Beginning in August 2000, CBP issued several general vacancy announcements for GS-14 positions. Pl.'s Opp'n to SMF ¶13. Multiple vacancies could be filled from one vacancy announcement. *Id.* ¶14. A list of the best qualified candidates, known as a "selection register," along with the applications themselves, the position descriptions, and the vacancy announcement were submitted to executive directors or directors with vacancies in their offices. Def.'s Ex. H ¶5. Directors would then make a recommendation to the selecting official as to the strongest candidate. *Id.* The selecting officials relied almost exclusively on the recommendation of the executive director or director. Heinrich Dep. 89:11-90:20, Mar. 27, 2009; Def.'s Ex. U at 3; *see also* Heinrich Dep. 30:3-31:4. During the relevant time period, the selecting officials were Assistant Commissioner Bonni Tischler, Deputy Assistant Commissioner John Heinrich or Deputy Commissioner Deborah Spero. Heinrich Dep. 23:2-24:16; Def.'s Ex. U at 2; Def.'s Ex. LL. As described below, plaintiff unsuccessfully applied for several promotions to GS-14 positions, even though he was placed on the selection register for each.

### A. Vacancy Announcement HEADQ/00-304KBS

Between August 16, 2000 and February 16, 2001, CBP advertised for a GS-14 Customs Inspector position under vacancy announcement HEADQ/00-304KBS. Def.'s Ex. I. Plaintiff applied for the position a little over two months after arriving at

Headquarters, on or about September 12, 2000.[2] Def.'s Ex. A. On Oct. 3, 2000, Gay Laxton, a 40-year old white female who was recommended by John McGowan, was selected by Heinrich. McGowan Dep. 91:4-13, May 7, 2009; Def.'s Exs. L; Pl.'s Ex. 1 ¶65. On November 2, 2000, the selection register containing plaintiff's name was returned without a selection.

### B. Vacancy Announcement HQOFO/01-005KBS

Between April 4, 2001 and August 4, 2001, CBP advertised for a GS-14 Customs Inspector position under vacancy announcement HQOFO/01-005KBS. Def.'s Ex. J. Plaintiff applied for the position on or about April 28, 2001. Def.'s Ex. P. On July 11, 2001, Mark Reefe, a 32-year old white male, who had been recommended by one of his supervisors, was selected by Tischler. Def.'s Exs. Q, R. On August 30, 2001, Todd Hoffman, a 34-year old white male, who had been recommended by James Engleman, was selected for promotion by Heinrich. Def.'s Exs. V, W, H at ¶5. On November 29, 2001, John Milne, a 45-year old white male, who had been recommended by Camille

---

[2] Gilbert contends that the terms of his settlement agreement with the Agency entitled him to a promotion upon his arrival at Headquarters. However, it is undisputed that the settlement agreement itself does not include those terms. Pl.'s Opp'n to Def.'s SMF ¶8. Gilbert is unable to point to evidence—other than his own testimony—supporting this claim. Indeed, his argument is not only uncorroborated but also undermined by the terms of the agreement itself. *See* Def.'s Ex. B. Though it is not normally the province of this Court to evaluate credibility, in such instances, as here, the Court may assess the plaintiff's account. *Arrington v. United States*, 473 F.3d 329, 343 (D.C. Cir. 2006) ("we have held that summary judgment 'is *most likely* when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.'") (citation omitted). Accordingly, I find that Gilbert's assertion that he was promised a promotion not credible and will not consider it in the subsequent analyses of his claims.

Polimeni to Jacksta, was selected by Tischler. Polimeni Dep.133:16-134:17, May 5, 2009 (Pl.'s Ex. 2); Def.'s Ex. U at ¶5.

### C. Vacancy announcement MHCMP-133463-TW

Between March 5, 2007 and March 16, 2007, CBP advertised for the position of Chief of Staff to the Assistant Commissioner of OFO, Jasyson Ahern, under vacancy announcement MHCMP-133463-TW. Def.'s Ex. EE. A certificate of eligible candidates was issued that included Marcy Brodsky, a 34-year old white female, and plaintiff. Def.'s Ex. JJ. The certificate noted that the list included the best qualified candidates for the position and that any may be selected. *Id.* On or about April 28, 2008, Ahern recommended Brodsky for the position, and the selecting official, Spero, concurred. Def.'s Ex. LL.

### D. Plaintiff's Additional EEO Activity

On July 12, 2001, Gilbert first contacted an EEO officer regarding his non-selection under vacancy announcement HQOFO/01-005KBS. Def.'s Ex. BB. Then, on or about September 12, 2001, Gilbert initiated a formal complaint of discrimination with respect to the selections that had been made to date under vacancy announcements HEADQ/00-304KBS and HQOFO/01-005KBS. He filed this action on November 1, 2005 [Dkt. #1]. After Brodsky's selection for the Chief of Staff position, Gilbert filed an additional EEO complaint on March 13, 2008. Def.'s Ex. HH. He also amended his complaint before this Court on December 15, 2009 to include that non-selection. Third Amend. Compl. [Dkt. #57].

Gilbert contends that CBP's decisions not to promote him on these six occasions—either because another was promoted or because no one was promoted—were based on retaliation for his prior EEO activity and/or race and age discrimination in violation of Title VII and the ADEA. Unfortunately for Gilbert, I disagree.

## DISCUSSION

Summary judgment is proper where the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Though the Court must draw all justifiable inferences in favor of the non-moving party in deciding whether there is a disputed issue of material fact, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Title VII establishes two elements for an employment discrimination claim: "(i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). If the employer asserts a legitimate, non-discriminatory reason for the adverse action, the Court need only determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally

discriminated against the employee on the basis of race, color, religion, sex, or national origin[.]" *Id.* at 494. The same approach also applies to age discrimination claims under the ADEA. *See Brown v. Brody*, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999), *abrogated on other grounds by Steele v. Schafer*, 535 F.3d 689 (D.C. Cir. 2008).

Title VII similarly prohibits employers from retaliating against an employee because that employee "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To prove retaliation, the plaintiff must show that he "engaged in protected activity, as a consequence of which [his] employer took a materially adverse action against [him]." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (citation omitted). The causal connection can be proven by direct evidence or inferred from the temporal proximity between the protected activity and the adverse action. *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006); *see also Cochise v. Salazar*, 601 F.Supp.2d 196, 201-02 (D.D.C. 2009). As with discrimination claims, if the employer offers a legitimate, nondiscriminatory reason for its actions, a court should proceed to the question of retaliation *vel non*. *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). Summary judgment must be granted for the defendant if the plaintiff fails to "produce sufficient evidence that would discredit those reasons and show that the actions were retaliatory." *Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008).

The parties do not contest that a failure to be promoted is an adverse action. Instead, the government offers a legitimate, non-discriminatory reason for each

occurrence: that each promotion decision was based on the agency officials' determination that the ultimately-selected candidates were the best-qualified individuals for the positions. "[W]hen an employer says it made a hiring or promotion decision based on the relative qualifications of the candidates, a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was '*significantly* better qualified for the job' than those ultimately chosen." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (citation omitted). This is because a factfinder would not ordinarily infer discrimination when the plaintiff is similarly qualified to the selected candidate; it is only when the plaintiff is *significantly* better qualified but *not* hired that "the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007). Because Gilbert cannot, for the following reasons, demonstrate that he was *significantly* more qualified than any of the other candidates promoted, summary judgment must be granted for the defendant.

### A. Vacancy Announcement HEADQ/00-304KBS

Vacancy Announcement HEADQ/00-304KBS, a general vacancy announcement, stated that the primary criteria against which candidates would be evaluated were: (1) knowledge of customs laws, regulations and procedures related to Field Operations; (2) ability to plan, evaluate, coordinate and implement Customs Service policies and programs; (3) ability to communicate orally; (4) ability to communicate in writing; (5)

knowledge of analytical and evaluative techniques and methods related to process redesign. *See* Def.'s Ex. I.

### 1. Selection of Ms. Gay Laxton

Laxton was selected for a GS-14 position as an assistant to McGowan. McGowan Dep. 63:7-64:2. McGowan had been tasked with introducing decision markers in other CBP offices with a business process method of analyzing large bodies of information to better utilize resources. *Id.* 78:1-11. He was looking for someone to support him in this new role, and to assist with things like keeping track of issues and follow-up, preparing training presentations, and doing internal research within the organization. *Id.* 80:1-81:21.

Plaintiff and Laxton appeared on the selection register, indicating that both were among the best qualified for the position. *Id.* 56:20-60:3; Pitts Dep. 176:5-9, June 30, 2009 ("Pitts 2009 Dep."). Laxton had worked at Headquarters since 1996, and had experience developing and implementing passenger control systems designed to promote efficiency, and had performed analytical and evaluative work related to those programs. Def.'s Ex. M. She had also coordinated training for all Customs inspectors; in that capacity, she was responsible for liaising with the contractor and in-house trainers and keeping apprised of all aspects of the training program to brief the Assistant Commissioner. *Id.* McGowan recommended Laxton because he felt that her organization, ability to work independently, and final work product best fit the need he perceived for the position. *Id.*; McGowan Dep. 91:4-13; 91:20-92:9. As our Circuit has instructed, "given the dynamic nature of the hiring process," the Court should not

"second-guess how an employer weighs particular factors in the hiring decision." *Jackson*, 496 F.3d at 709.

Gilbert also had experience relevant to the position (*see* Def.'s Ex. A), and, taking all inferences in his favor, was recommended by his first-line supervisor, Arthur Pitts (Pitts 2009 Dep. 128:14-17). Indeed, Pitts had a very favorable view of Gilbert and believed him to be more qualified than Laxton, whom Pitts had at some point supervised at Headquarters. *Id.* 66:1-9; 69:8-11. Gilbert contends that Pitts' statement is sufficient to create a genuine dispute of material fact. However, Pitts was not involved in the selection process other than giving informal recommendations. *Id.* 136:20-141:14; Def.'s Ex. AA at 2. Moreover, Pitts played no role in the formal selection process or in the designation of selection criteria. As such, his opinion that generally Gilbert was more qualified than Laxton is immaterial for her selection for *this particular position*, about which Pitts had little knowledge. Gilbert is unable to point to anything in the record to indicate that he was significantly more qualified than Laxton based on the criteria McGowan outlined.

Gilbert's retaliation claim must also fail. The defendant argues that because Laxton's selection over Gilbert occurred approximately three years *after* Gilbert's initial EEO activity relating to his removal in San Diego, Gilbert cannot demonstrate a temporal proximity sufficient to infer causation and thus fails to make a prima facie case. By contrast, Gilbert attempts to demonstrate that a "pattern of antagonism" existed sufficient for the fact-finder to infer causation. *See, e.g., Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). However, I need not even decide whether Gilbert has

made out a prima facie case of retaliation. *Jones*, 557 F.3d at 678. Even assuming that he has, he has failed to rebut the defendant's legitimate, non-discriminatory justification that Laxton was more qualified than Gilbert for the position for the reasons discussed above. Accordingly, summary judgment on Count V must be granted for the defendant.

### 2. Non-Selection

Count I alleges that Gilbert's failure to be selected on November 2, 2001—when a selection register with his name was returned without selection—was a result of discrimination and retaliation. To make a prima facie case of discrimination or retaliation when plaintiff is denied a position that remains unfilled, "the plaintiff must show that the position was not withdrawn simply for lack of a vacancy." *Carter v. George Washington University*, 387 F.3d 872, 883 (D.C. Cir. 2004) (applying to race discrimination case). *See also Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (same standard applies to age discrimination cases). Gilbert has not put forth any evidence that the position was not filled for this reason or that the employer "still needed someone to occupy the position," as demonstrated by actions such as leaving the position unfilled or taking steps to recruit other candidates for the position. *See, e.g.*, *Carter*, 387 F.3d at 883. Because Gilbert has failed to make out a prima facie case of either discrimination or retaliation, summary judgment must be granted for the defendant.

### B. Vacancy Announcement HQOFO/01-005KBS

Vacancy Announcement HQOFO/01-005KBS, a general vacancy announcement, stated that the primary criteria against which candidates would be evaluated were the same as those listed in Vacancy Announcement HEADQ/00-304KBS: (1) knowledge of

customs laws, regulations and procedures related to Field Operations; (2) ability to plan, evaluate, coordinate and implement Customs Service policies and programs; (3) ability to communicate orally; (4) ability to communicate in writing; (5) knowledge of analytical and evaluative techniques and methods related to process redesign. *See* Def.'s Ex. J.

### 1. Selection of Mr. Mark Reefe

Count II relates to the promotion of Reefe over Gilbert. Though the recommending official is disputed, Reefe was ultimately appointed by Tischler. Def.'s Exs. Q-R. Reefe had experience as an Inspector and Senior Inspector at Dulles Airport, and had been at Headquarters for over two years prior to his promotion. In addition, Reefe had wide experience across the agency, having served as a program officer for private aircraft, small vessels, Customs signage, airport security, Automated Targeting System/Passenger application, Fairness in Law Enforcement Data Collection, and Qik Analysis. Def.'s Ex. S.

Reefe's supervisors thought favorably of him: Jacksta testified that Reefe had worked at Headquarters long enough to understand Headquarters operations as well as know how to integrate agency programs, spot and resolve issues across programs, and coordinate with other agencies. Jacksta Dep. 129:7-19, May 11, 2009. In particular, he noted a presentation Reefe gave to the Field Directors presenting a software package that would integrate data on air travelers with the capabilities of land border and seaports. *Id.* 117:2-22. That software would allow a customs inspector to access all of the information regardless of the port of entry. *Id.* Similarly, Polimeni's undisputed opinion was that

Reefe was "methodical," "specific," "thorough," "comprehensive," and that he "paid attention to details" and was able to work independently. Polimeni Dep. 66:15-67:1.[3]

Though Jacksta acknowledged that some of Gilbert's experience would have been relevant and useful for the position (*see, e.g.*, Jacksta Dep. 118:13-119:7), he also thought that Gilbert lacked the ability to articulate his understanding of the relationships between and among the various programs run by the agency. *Id.* 98:8-18; 99:6-20; 119:12-16. While Gilbert eventually acquired this knowledge after several years at Headquarters, one of the main criteria against which candidates were evaluated was their ability to communicate, both orally and in writing. Def.'s Ex. J. Though Gilbert may have been qualified for the position, unfortunately for him, mere qualification is insufficient to defeat summary judgment. Because Gilbert is unable to demonstrate that he was *significantly more qualified* that Reefe, summary judgment must be granted for the defendant as to discrimination as well as retaliation on this Count.

### 2. Selection of Mr. Todd Hoffman

Hoffman was recommended for a GS-14 promotion by James Engleman, the director of the Anti-Smuggling Unit within OFO, and ultimately selected by Heinrich. Engleman Dep. 62:3-6; 81:10-19, Apr. 28. 2009. Engleman believed that Headquarters experience was an important qualification for the position because the environment was different than at a port of entry, and selected Hoffman in part because he had spent three

---

[3] Pitts thought that Gilbert was significantly more qualified than Reefe. Pitts 2009 Dep. 69:2-7. However, for the reasons discussed above, including Pitts' unfamiliarity with the specific positions being filled and his lack of involvement in the process, his assessment of the relative qualifications of Gilbert and Pitts is immaterial to the resolution of Gilbert's claims.

13

years at Headquarters developing and managing various programs. *Id.* 91:6-17; Def. Ex. X. In reviewing applications, Engleman looked at applicants' accomplishments, duties, assignments, skills, and abilities at Headquarters. Engleman Dep. 89:21-90:4. In addition, Hoffman's prior assignment had been with an office that coordinated and communicated closely with the Anti-Smuggling Unit. *Id.* 104:1-17.

By contrast, Gilbert provided "little or no information about any Headquarters[] accomplishments, activities, skills, etc." and did not list any specific accomplishments or specific examples of relevant work he had performed. *Id.* 107:5-7; 108:1-109:15. Nor can Gilbert point to anything in the record to indicate that he was significantly more qualified than Hoffman. *See* Pl.'s Opp'n 58. Accordingly, Gilbert has not met his burden in demonstrating that a reasonable jury could find that this non-discriminatory reason was not the action reason, and that the Agency intentionally discriminated against Gilbert on the basis of race or age.

Similarly, plaintiff has offered no evidence that Engleman knew about Gilbert's prior EEO activity before he recommended Hoffman for selection, and has thus failed to set forth a prima facie case of retaliation.[4] Thus, summary judgment as to Count IV must be granted for the defendant.

---

[4] Though Gilbert argues that Heinrich, and not Engleman, knew about Gilbert's EEO activity, Heinrich's unrebutted testimony is that he relied on recommendations from executive directors like Engleman. *See* Pl.'s Opp'n to Def.'s SMF ¶¶15-16 ("In fact, the actual selection decisions are usually initiated by Directors and Executive Directors."). As such, Heinrich's knowledge about Gilbert's EEO activity is immaterial to the resolution of plaintiff's retaliation claim as to the selection of Hoffman.

14

### 3. Selection of Mr. John Milne

The government argues that it is entitled to summary judgment on Gilbert's claim with respect to Milne's promotion because Gilbert failed to exhaust his administrative remedies. As our Circuit has explained, the "EEOC has established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citation omitted). Plaintiffs must exhaust those administrative remedies before suit can be brought in district court. *Id.*

The government contends that because Gilbert sought informal EEO counseling in July 2001, filed his formal EEO complaint on September 12, 2001, and did not thereafter seek to amend his complaint, Gilbert failed to exhaust his administrative remedies for his non-selection in favor of Milne. I agree. Though equitable considerations may, in certain instances, permit a plaintiff to proceed on an unexhausted claim, *see, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), Gilbert has not proffered any persuasive reason why his case qualifies for such an exception. Gilbert never amended his complaint to include his failure to be promoted over Milne. Indeed, the only evidence in the record of informing the EEO about anything related to this claim was in his January 29, 2002 affidavit to the EEO, where he notes that on November 29, 2010, a list was referred for additional selection under Vacancy Announcement HOFO/01-005KBS. *See* Def.'s Ex. C at 3. By that time, Milne had been selected for the GS-14 promotion

15

over Gilbert, yet for reasons known only to the plaintiff, he failed to include this event in his affidavit. Accordingly, the government is entitled to summary judgment on Count III.

### C. Vacancy Announcement MHCMP-133463-TW

Brodsky was recommended for the Chief of Staff position by Ahern and selected by Spero. Def.'s Ex. LL. The position was created to assist Ahern and his deputy, William Heffelfinger, in their duties. Heffelfinger Dep. 24:9-10, Mar. 11, 2010. Because the Chief of Staff would act on Ahern's behalf, he sought a candidate who had "judgment, competence, [his] confidence as well as understanding of [his] thinking on [certain] issues." Ahern Dep. 55:17-22, Dec. 9, 2008 (Pl.'s Ex. 16) ("Ahern 2008 Dep."). It was important to him that the candidate "ha[d] [his] confidence, loyalty, [and] trust," to maintain the confidentiality of discussions and integrity of various reports. *Id.* 96:2-8. Additional qualities he wanted included an ability to perform in a front office setting, interact with other agency officials, and "an in-depth knowledge of the various functions within CBP and a proven ability to manage people and projects in increasingly more responsible positions." Ahern Decl. ¶19, Apr. 4, 2008 (Pl.'s Ex. 38).

Prior to her promotion, Brodsky had already been working for Ahern as his executive assistant. In that role, her tasks included helping him develop policy, staffing, attending meetings on his behalf, and coordinating workload between Ahern and Heffelfinger and acting in Ahern's stead. Heffelfinger Dep. 55:20-56:19; 57:20-21. Indeed, Ahern selected Brodsky for the position because, in his view, she had demonstrated the necessary qualities in her work supporting the Assistant Commissioner's daily responsibilities. *See, e.g., id.* 55:15-57:22. In particular, Ahern

16

noted that Brodsky had "proven performance in a front office setting, an ability to work with other principal agency officials on behalf of the Assistant Commissioner and ha[d] shown the ability to represent the Assistant Commissioner in meetings and conferences involving high-level officials from other agencies, business and industry executives, and Members of Congress." Ahern Decl. ¶20.

It is worth repeating that our Circuit has instructed lower courts to decline to "serve as a 'super-personnel department that reexamines an entity's business decisions.'" *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (citation omitted). Though Brodsky may have not had as much experience in certain areas as Gilbert, she did meet the most crucial criteria Ahern identified: trust. Gilbert, on the other hand, did not.

Ahern had concerns about Gilbert as a result of his participation in disciplinary proceedings against an employee in San Diego. Ahern 2008 Dep. 96:9-18. The employee at issue was alleged to have inappropriately provided official-use only reports to Gilbert while he was separated from CBP. *Id.* 99:6-101:2. Ahern recalled that Gilbert, who had been the employee's supervisor, had requested that she bring him the documents. *Id.* 100:10-15. Though Gilbert argues that he did not, in fact, request those documents, whether or not Gilbert *actually* requested the documents or the employee voluntarily provided them is not material to the resolution of Gilbert's claim: Ahern *believed* Gilbert had requested the documents and thus had questions about his trustworthiness. Though Ahern may have been wrong in his belief, Gilbert is unable to demonstrate that his lack of trust was merely a pretext and that a jury could reasonably infer discriminatory motive. Furthermore, Brodsky's promotion took place nearly six

years after Gilbert's initial counseling with the Agency's EEO office, and two years after the filing of this suit. Thus, Gilbert cannot demonstrate the temporal proximity required to set forth a prima facie case of retaliation. Accordingly, summary judgment must be granted for the defendant as to Count VI.

## CONCLUSION

For all the foregoing reasons, the defendant's Motion to for Summary Judgment is GRANTED. An appropriate order shall accompany this memorandum opinion.

_____
RICHARD J. LEON
United States District Judge