**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ARTHUR GILBERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-cv-2128 (RJL)** |
| | ) | |
| **JANET NAPOLITANO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**
(July 16, 2013) [Dkt. #85]

Plaintiff Arthur Gilbert ("plaintiff" or "Gilbert") is suing Janet Napolitano in her official capacity as Secretary of Homeland Security. A former employee of U.S. Customs and Border Protection ("CBP" or "Customs"), Gilbert alleges that CBP discriminated and retaliated against him by denying his applications for a promotion in favor of younger white candidates. *See* Third Am. Compl. ("TAC") [Dkt. #57]. Before the Court is Defendant's Renewed Motion for Summary Judgment as to Claims Stemming from Selection of John Milne ("Def.'s Renewed Mot.") [Dkt. #85]. Upon consideration of the parties' pleadings, relevant law, and the entire record therein, the motion is GRANTED.

**BACKGROUND**

For detailed recitations of the facts underlying all of plaintiff's claims, see *Gilbert v. Napolitano*, 670 F.3d 258, 259–60 (D.C. Cir. 2012), and *Gilbert v. Napolitano*, 760 F.

Supp. 2d 21, 23–25 (D.D.C. 2011). Seeing no reason to retread the same background information a third time, I will focus on the one remaining claim now at issue.

Plaintiff alleges that CBP discriminated against him based on his age and race, and retaliated against him for past Equal Employment Opportunity ("EEO") activity, when it chose John Milne ("Milne") over him from the list of best-qualified applicants ("the best-qualified list") for promotion to a GS-14 position ("the Milne promotion"). TAC ¶¶ 109–14; 280–92. On January 12, 2011, I granted defendant's motion for summary judgment on these claims because plaintiff failed to exhaust his administrative remedies. *See* Final Judgment [Dkt. #74]; *Gilbert*, 760 F. Supp. 2d at 29–30. Our Circuit Court, however, reversed that decision, holding that Customs forfeited the failure-to-exhaust defense by failing to raise it in its answer to the complaint. *See* Mandate of USCA [Dkt. #78]; *Gilbert*, 670 F.3d at 260–61. The Court noted, however, that "defendant may seek leave to amend its answer on remand." *Id.* at 261 (citing *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 345 (D.C. Cir. 1997)). And so it did!

Upon its return to this Court, CBP heeded our Circuit Court's advice and amended its answer to include an exhaustion defense. *See* Am. Answer to TAC at 1 [Dkt. #84]. Defendant now renews its motion for summary judgment on plaintiff's claims arising from the Milne promotion. *See* Def.'s Renewed Mot. at 1; Mem. in Supp. of Def.'s Renewed Mot. for Summ. J. ("Def.'s Mem.") at 10–12 [Dkt. #85]. Plaintiff, naturally, opposes the motion. *See* Pl.'s Mem. in Opp, to Def.'s Mot. for Partial Summ. J. ("Pl.'s

Mem.") [Dkt. #87]. Unfortunately for Gilbert, the Court again finds that his failure to exhaust his administrative remedies entitles defendant to summary judgment.

**LEGAL STANDARD**

The Court grants a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the burden is on the movant to show that there is no dispute of fact, the non-moving party also bears the "burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

To the extent the non-moving party will bear the burden of proving facts at trial, those facts must be supported by competent evidence, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and the absence of such evidence can form the basis for summary judgment, *see id.* at 322–23. Finally, "if the evidence presented by the opposing party is 'merely colorable' or 'not significantly probative,' summary judgment may be granted," *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002) (quoting *Anderson*, 477 U.S. at 249–50), because the "possibility that a jury might speculate in the plaintiff's favor . . . is simply insufficient to defeat summary judgment," *Montgomery v. Chao*, 546 F.3d 703, 708 (D.C. Cir. 2008); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## ANALYSIS

It is well-established that federal employees must exhaust administrative remedies before bringing lawsuits in federal court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, or the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*[1] *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (citing *Bowden*, 106 F.3d at 437); *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (citing *Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007), and *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998)); *see also* 42 U.S.C. § 2000e-16(c) (Title VII); 29 U.S.C. § 633a(b)–(d) (ADEA). "This administrative exhaustion requirement applies to all discrete acts of discrimination or retaliation." *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 92 (D.D.C. 2005).

Now that Customs has pleaded its exhaustion defense in an amended answer, the

[1] The first step for "[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information" is to "consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). That contact must be initiated "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* § 1614.105(a)(1). Only after a mandatory counseling period of 30 to 90 days, *see* 29 C.F.R. § 1614.105(d)–(f), may the aggrieved person file an administrative complaint with the Equal Opportunity Employment Commission ("EEOC"), *see id.* § 1614.106(a), (b). The claimant may then file a civil action after the administrative process has run its course.

Court again finds that CBP is entitled to judgment as a matter of law because Gilbert failed to exhaust administrative remedies for his claims based on the Milne promotion. Gilbert in fact concedes that "he did not separately bring a new non-promotion complaint regarding the particular HQOFO/01-005KBS register" that resulted in Milne's promotion. Pl.'s Mem. at 5. Nor did he file anything to amend or otherwise update his existing complaint. *See id.* at 15 (after learning that Milne was promoted, "Gilbert did not submit anything new at that time").

Nevertheless, plaintiff contends that he should be permitted to litigate the Milne promotion because: (1) it was included in his September 2001 EEO complaint, *see* Pl.'s Mem. at 3–5; (2) it is "like or related to" the other claims included in his complaint, *see id.* at 6–14; and (3) it would be inequitable to enforce the exhaustion requirement, *see id.* at 14–17. For the following reasons, I find none of these arguments persuasive.

**A. Gilbert Did Not Raise the Milne Promotion in His September 2001 EEO Complaint.**

As an initial matter, it is impossible for Gilbert's September 10, 2001 complaint to have included claims based on the Milne promotion because the best-qualified list for that opening was not submitted until November 29, 2001, more than eleven weeks *after* the complaint was filed, *see* Pl.'s Statement of Genuine Issues ("Pl.'s SGI") at 3 [Dkt. #88], and Milne's promotion must have occurred on or after that date.[2] Absent the gift of

[2] It is unclear whether Milne was selected *on* November 29, 2001, as plaintiff says in his Statement of Genuine Issues, *see* Pl.'s SGI at 3, or *after* November 29, 2001, as he says in

prophecy—which Gilbert undoubtedly would have referenced in the many lengthy discussions about his skills and accomplishments found throughout this record, *see, e.g.*, Pl.'s SGI, Ex. 22 (2013 Declaration of Arthur Gilbert); Pl.'s SGI at 8–15; Pl.'s Mem. at 22–25—plaintiff could not in mid-September have alleged discrimination premised on an employment action that took place two months later.[3]

**B. Plaintiff's Claims Arising Out of the Milne Promotion Are Not "Like or Related to" the Claims in His Complaint.**

Furthermore, plaintiff's Milne-promotion claims are not "like or related to" the other claims included in his EEO complaint. Our Circuit held in *Payne v. Salazar* that an unfiled discrimination claim is "like or related to" a filed claim only if an investigation of the unfiled claim would "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." 619 F.3d 56, 65 (D.C. Cir. 2010); *see also Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (a "like or related" claim is

---

his Third Amended Complaint, *see* TAC ¶ 283. The answer has no effect on my analysis.

[3] Gilbert maintains that his September complaint included claims based on Milne's November promotion because it alleged discrimination "throughout [the] year" 2001. *See* Pl.'s Mem. at 4; *see also* Pl.'s SGI, Ex. 5 at 2 (plaintiff's EEO complaint). The Court rejects the notion that a claimant can use sweeping temporal phrases to incorporate by reference (and vague reference, at that) any discrimination that might occur in the future. The exhaustion requirement is intended "to allow the agency an opportunity to resolve the matter internally and avoid unnecessary burdening of the courts." *Bush v. Engleman*, 266 F. Supp. 2d 97, 101 (D.D.C. 2003) (internal quotation marks omitted). How can an agency be expected to *resolve* matters internally if administrative complaints are understood to spontaneously and unpredictably encompass new claims that arise in the months after the complaint is filed? Obviously, it can't. A complaint filed in 2013 that alleges discrimination "throughout the decade" does not state a claim—and certainly

one that "could have reasonably been expected to grow out of [the] earlier complaint" (internal quotation marks omitted)). Plaintiff's claims relating to the November Milne promotion could not reasonably have been expected to arise or grow out of—and in fact, did not arise or grow out of—the investigation of his September EEO complaint.

Plaintiff's EEO complaint was dated September 12, 2001 and it alleged the "most recent discriminatory event occur[red]" on "070101/throughout year." Pl.'s SGI, Ex. 5 at 2. It did not identify a single discriminatory or retaliatory act after July of 2001. *See id.* It did not mention Milne, the November 29, 2001 best-qualified list, or the position to which Milne was promoted.[4] *See id.* While it is, of course, possible that an EEO investigator might choose to expand an investigation beyond the scope of the complaint and ferret out any new acts of discrimination that may occur after the complaint was filed, it is not in all cases reasonable to *expect* the investigator to do so. In *Payne*, for instance, the court held that an investigation of an unfiled claim could not have arisen from an ongoing investigation because the events underlying the unfiled claim occurred after the investigation ended. 619 F.3d at 65.

Likewise, it would have been entirely unreasonable to expect the investigator in Gilbert's case to have investigated the events surrounding the November 29, 2001 best-qualified list for one simple reason: he told Gilbert that he was not investigating it. As of

---

would not exhaust administrative remedies—for a wrongful termination in 2018.

[4] This is unsurprising, given the sequence of events already discussed, *supra*.

January 29, 2002—two whole months after the November list was submitted—plaintiff had clear notice that the investigation *had not* in fact expanded to include claims relating to the Milne promotion, *see* Pl.'s SGI, Ex. 2, and plaintiff took no action at that time.

In an affidavit signed and sworn on that date, Gilbert answered a number of questions posed by the EEO investigator, Lewis Munoz. *See id.* Most of the questions fell under one of three headings, each covering an "Issue" raised in plaintiff's EEO complaint. *See id.* at 2, 8, 11. Issue one focused on non-promotions "[c]ommencing June 2000 to July 2001." *Id.* at 2. Issue two was plaintiff's reassignment to a new division "[o]n July 1, 2001." *Id.* at 8. Issue three addressed working conditions "commencing June 2000 to June 1, 2001." *Id.* at 11. The questions gave no indication that the November best-qualified list or the Milne promotion had arisen during the investigation. Quite to the contrary, the affidavit's framing of the issues made clear that the investigation was focused on events that occurred between June 2000 and July 2001. And, as discussed at greater length below, plaintiff's responses did not provide notice that the investigation *should* expand to cover the Milne promotion. *See id.* It therefore would have been unreasonable to expect that the November best-qualified list or the Milne promotion were part of the investigation.[5]

[5] Gilbert points to three Milne-related documents found at pages 1140 to 1164 the investigator's report as evidence that the Milne promotion was in fact investigated. *See* Pl.'s Mem. at 12–13. A few documents in a large administrative record, however, are not indicative of the true scope of an investigation. And in this case, undisputed documentary evidence confirms that issues under investigation were limited to the "June 2000 to July

**C. Assuming the Milne Promotion Claims are "Like or Related," Plaintiff Still Failed to Exhaust His Administrative Remedies.**

In addition, even if the Milne-promotion claims are "like or related" to those in the complaint, that would have allowed plaintiff to bypass certain steps in the administrative process but would *not* allow him to forego administrative exhaustion entirely, which is what plaintiff seeks to do in this case.

Our Circuit has held that, once a claimant has filed a complaint, he can forego administrative counseling on any subsequent claims that are "like or related to" the claims already in the complaint. *See Weber*, 494 F.3d at 183–84. Instead of going through that first phase of administrative review, as required by 29 C.F.R. § 1614.105(a), the claimant can simply amend his complaint pursuant to 29 C.F.R. § 1614.106(d) and bring the new "like or related" claims directly to the investigator. *Weber*, 494 F.3d at 184–85.

Gilbert did not do that, however. Unlike the plaintiff in *Weber*, plaintiff did not

---

2001" timeframe. *See* Def.'s Renewed Mot., Ex. 4 at ¶ 5 (February 13, 2002 declaration describing non-promotions as occurring "when: commencing June 2000 to July 2001"); *Id.*, Ex. 5 at ¶ 5 (December 12, 2002 declaration with same description of claims and omitting Milne from list of selectees for promotions under investigation); Pl.'s SGI, Ex. 11 at 1 (summary of investigation, listing same issues and date limits as in plaintiff's January 2012 affidavit).

It would appear that the Milne documents ended up in the investigator's possession because Milne was promoted under the same generic vacancy announcement number as other promotions actually raised by plaintiff before the agency—*e.g.*, the July 11, 2001 promotion of Mark Reefe, *see* TAC 83–87. The investigator requested the documents relevant to that number on November 7, *2001*, several weeks *before* the Milne promotion. *See* Pl.'s SGI, Ex. 11 at 11. The document packages were not provided until a year later, but there is no evidence that the investigator took any interest in documents that post-

"sen[d] a memo to the EEO office indicating [his] wish to amend [his] charges." Pl.'s Mem. at 7; *see Weber*, 494 F.3d at 181. Nor did plaintiff "file a motion with the administrative judge to amend [his] complaint to include issues or claims like or related to those raised in the complaint," as contemplated by 29 C.F.R. § 1614.106(d)—the regulation that plaintiff notes was "emphasized" in the *Weber* decision. Pl.'s Mem. at 7. Plaintiff points to just one document—his January 29, 2002 affidavit, Pl.'s SGI, Ex. 2—as evidence that he raised the Milne promotion with the EEOC. *See* Pl.'s Mem. at 5, 8. But on its face, the affidavit does not mention Milne's promotion or plaintiff's non-promotion from the November 29, 2001 best-qualified list. It merely notes that "[o]n 112901 list was referred for additional selection to be made no later than 030102." Pl.'s SGI, Ex. 2 at 3. Such passing mention of the "112901" best-qualified list, without more, would not notify the investigator that plaintiff was amending his complaint to include claims arising from the Milne promotion. Nowhere else in the affidavit did plaintiff reference a new claim, or even correct the investigator's clear understanding that the claims were based on non-promotions between "June 2000 [and] July 2001." *See supra*. Gilbert thus did not exhaust even those lesser administrative remedies required for "like or related" claims that arise after a complaint is filed.[6]

---

dated November 7, 2001.

[6] Additionally, I read the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), as effectively doing away with the "continuing violation theory" that once allowed plaintiffs to bring completely unexhausted claims to federal

**D. There Is No Equitable Basis for Excusing Plaintiff's Failure to Exhaust.**

Finally, the Court is not moved by either of plaintiff's equitable arguments. First, even assuming Investigator Munoz incorrectly advised plaintiff that he need not take any steps to bring claims based on the Milne promotion, that would *at most* excuse plaintiff's failure to pursue administrative relief *within the proscribed time limits*; it would *not* excuse his total "fail[ure] to exhaust or even to begin his administrative remedies." *Siegel v. Kreps*, 654 F.2d 773, 777 (D.C. Cir. 1981); *see also id.* at 778 n.14 ("Even if appellant had established a justifiable reliance on . . . erroneous advice, he would, at most, be entitled to a waiver of the time limits for the initiation of a complaint with the administrative agency rather than to the right to institute a civil action.").[7] And any reliance on such advice would have been unreasonable, given that plaintiff had already

---

court in cases like this one. *See, e.g.*, *Nguyen*, 895 F. Supp. 2d at 172 ("[S]ince the Supreme Court's decision in *Morgan*, the continuing violation theory is restricted to claims akin to hostile work environment claims because those violations—unlike a discrete act such as firing or failing to promote an employee—cannot be said to occur on any particular day." (internal quotation marks omitted)); *Hernandez v. Gutierrez*, 656 F. Supp. 2d 101, 105 (D.D.C. 2009) ("*Morgan* . . . bar[s] a plaintiff from proceeding with non-exhausted claims of discrete acts regardless of whether the occurred *after* the filing of an administrative complaint *and regardless of whether they are sufficiently related to exhausted claims*." (second emphasis added)). Because plaintiff did not exhaust his remedies with respect to the Milne-promotion, he cannot now litigate it in this Court.

[7] Plaintiff relies on *Bowden*, 106 F.3d at 438, and *Jarrell v. United States*, 753 F.2d 1088, 1091–92 (D.C. Cir. 1985), both of which deal with the timeliness of an administrative charge, not the requirement that one be filed at all. In fact, the same year as our Circuit decided *Jarrell*, it also decided *Ethnic Employees of Library of Congress v. Boorstin*, wherein the Court approvingly cited *Siegel* for the proposition that there is a meaningful difference between excusing a filing's untimeliness and excusing the filing requirement

received notice that the investigation was, up to that point, limited to non-promotions from "June 2000 to July 2001," *not* any subsequent non-promotions under the same vacancy announcement numbers. *See* Pl.'s SGI, Ex. 2.[8]

Nor does this case present "the highly unusual circumstances" that led the court in *Brown v. Marsh* to find that enforcing administrative exhaustion requirements would be "unconscionable." 777 F.2d 8, 17–18 (D.C. Cir. 1985). In that case, the claimant had "dealt extensively with EEO Counselors." *Id.* at 17. He "filed numerous complaints," which had "gone up and down the judicial and administrative hierarchy and then up and down again." *Id.* The claimant was "living far from this forum" and "put to considerable trouble and expense," and at least five different federal courts' "resources . . . [were] liberally expended in attempting to resolve various aspects of the dispute." *Id.* Moreover,

---

altogether. 751 F.2d 1405, 1413 (D.C. Cir. 1985).

[8] Because the Court assumes, for the sake of argument, that Munoz actually gave plaintiff bad advice, it is irrelevant that plaintiff is unable to depose the now-deceased investigator. *See* Pl.'s Mem. at 16–17. In addition, Gilbert's assertion that his attorney would have deposed Munoz if defendant had raised the exhaustion defense sooner is disingenuous at best. Defendant first argued exhaustion in its Motion for Summary Judgment filed in May 2010. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. at 38–40 [Dkt. #66]. Plaintiff's opposition, filed on July 7, 2010, makes no mention of his supposed discussion with Investigator Munoz. *See* Pl.'s Mem. in Opp, to Def.'s Mot. for Summ. J. at 41–44 [Dkt. #69]. Mr. Munoz's obituary, meanwhile, is from a local newspaper's June *2011* archive and says that Mr. Munoz passed away on May 3. *See* Pl.'s SGI, Ex. 13 ("www.newtownpress.com/***ARCHIVES-2011***/south_jersey_***obituaries.0611***.htm" (emphasis added)). Plaintiff's inability to depose the investigator is thus a problem of his own making. *See also Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982) ("[A]ppellant (plaintiff) had the burden of pleading and proving in the district court any equitable reasons for his failure to meet the thirty-day requirement, and he did not do so.").

the claimant's failure to exhaust administrative remedies was the ground for dismissing the entire case, not one particular claim. *Id.* at 11–12.

The procedural history of this case pales in comparison to *Brown*. *Compare Gilbert v. Napolitano*, 670 F.3d at 259–60, *with Brown*, 777 F.2d at 9–11. Gilbert filed only one EEO complaint, and there is no evidence that he ever had extensive dealings with counselors. His case was litigated in only one jurisdiction, and it went "up . . . the judicial and administrative hierarchy" only once prior to our Circuit Court's remand last year. Most importantly, dismissing plaintiff's Milne-promotion claims for failure to exhaust administrative remedies would not put plaintiff out of court or mean that all of the discovery and litigation to date was for naught, as was the case in *Brown*. Gilbert has already had the opportunity to litigate all of his claims up to our Circuit Court. It is only this one discrete instance of non-promotion—a small piece of plaintiff's overall case—that will be dismissed on the ground that it was not administratively exhausted. In my judgment, such an outcome is both conscionable and required by law.[9]

[9] Because plaintiff's failure to exhaust administrative remedies is reason enough to grant summary judgment, the Court need not reach the merits of these claims.

## CONCLUSION

For all the foregoing reasons, Defendant's Renewed Motion for Summary Judgment as to Claims Stemming from Selection of John Milne [Dkt. #85] is hereby GRANTED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge